A. E. INVESTMENT CORPORATION, Respondent, v. LINK
BUILDERS, INC., Defendant: DEQUARDO, ROBINSON,
CROUCH & ASSOCIATES, INC., Appellant.

*No. 241. Argued January 3, 1974.—Decided February 18, 1974.*
(Also reported in 214 N. W. 2d 764.)

480

For the appellant there was a brief by *Niebler & Niebler* and *John H. Niebler,* all of Menomonee Falls, and oral argument by *John H. Niebler.*

For the respondent there was a brief by *Charne, Glassner, Tehan, Clancy & Taitelman, S. C.,* of Milwaukee, and oral argument by *William E. Glassner, Jr.*

HEFFERNAN, J. The demurrer to the cause of action is based on the single ground that the facts stated therein are not sufficient to constitute a cause of action. The defendant defines the question raised on the demurrer as being whether the defendant had a "duty to protect the subtenant plaintiff's future economic interests from loss allegedly resulting from a condition of the building." It responds to that question only by attempting to show that an architect owes no duty to a person with whom

he is not in privity of contract. As a consequence, the defendant relies on the narrow argument that it has no responsibility for any economic loss to the plaintiff because it has no duty to the plaintiff at all and no responsibility to be answerable for any damages, irrespective of the nature of the loss.

Unfortunately, this approach to the question deprives this court from making any policy determination in respect to whether damages for economic losses of the type claimed herein should be allowed if we should conclude that the plaintiff has stated a cause of action.

We believe that the narrow concept of duty relied on by the defendant architect has long been discarded in Wisconsin law. The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. This is the view of the minority in *Palsgraf v. Long Island R. R. Co.* (1928), 248 N. Y. 339, 162 N. E. 99. This court, by implication at least, adopted that view in *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. 2d 29, and expressly adopted the *Palsgraf* minority rationale in *Klassa v. Milwaukee Gas Light Co.* (1956), 273 Wis. 176, 77 N. W. 2d 397. The history of this court's rejection of the no duty-no liability concept of the majority in *Palsgraf* is capsulized in *Schilling v. Stockel* (1965), 26 Wis. 2d 525, 531, 133 N. W. 2d 335. We therein said:

"Commencing in 1952, with *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. (2d) 29, we ruled on a number of cases in which we rejected 'the *no-duty* formula of *Palsgraf* and *Waube,*' to use the phraseology of *Longberg v. H. L. Green Co.* (1962), 15 Wis. (2d) 505, 516, 113 N. W. (2d) 129, 114 N. W. (2d) 435. See *Colla v. Mandella* (1957), 1 Wis. (2d) 594, 598, 85 N. W. (2d) 345, and *Klassa v. Milwaukee*

*Gas Light Co.* (1956), 273 Wis. 176, 77 N. W. (2d)
397. Duty is still an important factor in determining
whether an act is negligent. *E.g., Szep v. Robinson*
(1963), 20 Wis. (2d) 284, 121 N. W. (2d) 753. However,
once an act has been found to be negligent, we no longer
look to see if there was a duty to the one who was in fact
injured."

A defendant's duty is established when it can be said
that it was foreseeable that his act or omission to act
may cause harm to someone. A party is negligent when
he commits an act when some harm to someone is fore-
seeable. Once negligence is established, the defendant
is liable for unforeseeable consequences as well as fore-
seeable ones. In addition, he is liable to unforeseeable
plaintiffs.

*Pfeifer v. Standard Gateway Theater, Inc.* (1952),
262 Wis. 229, 240, 55 N. W. 2d 29, stated:

"If the jury does determine that there was negligence,
and that such negligence was a substantial factor in
producing the injury, it is then for the court to decide
as a matter of law whether or not considerations of
public policy require that there be no liability."

The consistent analyses of this court reveal that the
question of duty is not an element of the court's policy
determination. It is, rather, an ingredient in the deter-
mination of negligence. We stated in *Schilling v.
Stockel, supra,* page 531, ". . . once an act has been
found to be negligent, we no longer look to see if there
was a duty to the one who was in fact injured." In
*Cirillo v. Milwaukee* (1967), 34 Wis. 2d 705, 711, 150
N. W. 2d 460, we said:

"This court has often stated that 'harm must be rea-
sonably foreseen as probable by a person of ordinary
prudence under the circumstances, if conduct resulting
in such harm is to constitute negligence.' There is no
necessity, however, that the actual harm that resulted
from the conduct be foreseen."

*Kemp v. Wisconsin Electric Power Co.* (1969), 44 Wis. 2d 571, 581, 172 N. W. 2d 161, followed the same rationale.

In *Schilling v. Stockel, supra,* page 532, we said:

"In the *Klassa Case,* at page 182, we quoted approvingly the analysis of the Minnesota court in *Christianson v. Chicago, St. P., M. & O. R. Co.* (1896), 67 Minn. 94, 97, 69 N. W. 640:

" 'Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow.' "

As held in *Schilling,* once it is determined that a negligent act has been committed and that the act is a substantial factor in causing the harm, the question of duty is irrelevant and a finding of nonliability can be made only in terms of public policy.

In the instant case, consistent with the rationale of the above cases, the defendant's alleged failure to properly take into account the condition of the subsoil when designing and supervising the construction of the building was an act or omission that would foreseeably cause some harm to someone. The duty was to refrain from such act or omission. Where, as here, it is alleged that the architect knew the purpose for which the building was being constructed, it was clearly foreseeable that a future tenant of the building was within the ambit of the harm. Hence, the harm to the particular plaintiff was foreseeable, although under the methodology of this

court, it is not necessary that either the person harmed or the type of harm that would result be foreseeable. The act or omission in the face of foreseeable harm was negligence.

The defendant places heavy emphasis on a series of recent cases decided by this court. *Scheeler v. Bahr* (1969), 41 Wis. 2d 473, 164 N. W. 2d 310; *Fitzgerald v. Ludwig* (1969), 41 Wis. 2d 635, 165 N. W. 2d 158; and *Thomas v. Kells* (1971), 53 Wis. 2d 141, 191 N. W. 2d 872. These cases, since they are concerned with special types of legal relationships, are out of the mainstream of negligence law in Wisconsin. The first two are concerned with the duties of an owner and occupier of land in respect to a plaintiff who comes upon the premises. Unless the landowner, by his conduct, places himself within an exception of the common law, he has an immunity from liability for negligence to one who comes upon his land.[1] The case of *Thomas v. Kells* speaks of parental duty. That case, like the two others relied upon by the defendant, has its origins in common-law immunity. It is concerned with the inroads on the doctrine of parental immunity commenced in *Goller v. White* (1963), 20 Wis. 2d 402, 122 N. W. 2d 193. All three of these cases, although fully consonant with the present law in their narrow field, are inappropriate in describing the general duty that an alleged tortfeasor has in the ordinary negligence case.

The complaint on its face spells out facts sufficient to constitute a cause of action. The defendant architect

---

[1] There has been a recent trend away from the special rules that confer a partial immunity on a possessor or occupier of land. There have been a number of cases which predicate liability according to the usual rules of negligence—at least in respect to licensees and invitees. *See Mounsey v. Ellard* (Mass. 1973), 297 N. E. 2d 43; *Pickard v. City and County of Honolulu* (1969), 51 Hawaii 134, 452 Pac. 2d 445; *Rowland v. Christian* (1968), 69 Cal. 2d 108, 70 Cal. Rptr. 97, 443 Pac. 2d 561.

failed to provide for soil conditions and as a result the floor settled. Because a harm to someone could be foreseen, the architect was guilty of negligence. If, as it is alleged in the complaint, such conduct was a substantial factor in causing the damage, the defendant is liable unless otherwise exonerated.

On the state of this record, the demurrer was properly overruled unless it is apparent that public policy reasons dictate the liability ought not follow.

The defendant placed its entire reliance upon the argument that there was no duty to the particular plaintiff, because there was no privity of contract with it. The privity-of-contract defense is, however, a legal defense; and as a legal defense, it was substantially shattered with the mandate of *MacPherson v. Buick Motor Co.* (1916), 217 N. Y. 382, 111 N. E. 1050. The reasoning of *MacPherson* was specifically applied to architects in the case of *Inman v. Binghamton Housing Authority* (1957), 3 N. Y. 2d 137, 164 N. Y. Supp. 2d 699, 143 N. E. 2d 895. The universal acceptance of the *MacPherson* approach was recognized by Prosser, in *Law of Torts* (4th ed.), p. 681, sec. 104, when he stated:

"It is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him, but also when the work is negligently done. This applies not only to contractors . . . but also to . . . supervising architects and engineers."

This court in *Fisher v. Simon* (1961), 15 Wis. 2d 207, 112 N. W. 2d 705, held a building contractor liable to third persons, stating:

"We can perceive no justifiable reason why a building contractor should be relieved from all liability to third persons for his negligence after completion and acceptance of the work by the owner where the defect is concealed or latent in character." (P. 213)

That case relied upon Prosser, *Law of Torts,* in concluding that:

"[A] contractor is held to the standard of reasonable care for the protection of anyone who may foreseeably be endangered by his negligence . . . ." (P. 213)

The case relied also upon the rationale of *MacPherson, supra.* In respect to damages, the court said, "We see no difference in principle whether the negligence results in personal injury or property damage." (P. 214)

*Fisher* is fully applicable to the negligence and liability of architects as well as the negligence of builders. *Fisher* applied the principles of *MacPherson* generally to "cases involving real structures." (P. 216)

Under Wisconsin negligence law, architects may be liable to third parties with whom they are not in privity of contract. The lack of privity does not constitute a policy reason for not imposing liability where negligence is shown to be a substantial factor in occasioning the harm.

The defendant also argues that, since an architect is a professional, his paramount duty is to his client, and that, if no duty is breached in connection with the architect-client relationship, there is no responsibility to third parties. We disagree with the argument that a professional can exonerate himself from liability for a negligent act which will foreseeably cause harm to third parties, merely because his client does not object. The very essence of a profession is that the services are rendered with the understanding that the duties of the profession cannot be undertaken on behalf of a client without an awareness and a responsibility to the public welfare. The entire ambit of state regulations as they apply to the profession of architecture is intended, not solely for the protection of the person with whom the architect deals, but for the protection of the world

at large.[2] Professionalism is the very antithesis to irresponsibility to all interests other than those of an immediate employer.

In the instant case, however, if, as it is alleged, the defendant architect negligently designed or permitted the erection of an unsuitable or unstable structure, it was hardly acting in the interests of its client, whether that client has seen fit to complain or not. An architect has the duty of using the standard of care ordinarily exercised by the members of that profession. *Paxton v. County of Alameda* (1953), 119 Cal. App. 2d 393, 398, 399, 259 Pac. 2d 934; Comment, *Architect Tort Liability in Preparation of Plans and Specifications,* 55 Cal. L. Rev. (1967), 1361, 1372; *see also: Shipman v. State* (1877), 43 Wis. 381, 391.

In *Fisher,* the court was not obliged to consider liability for other than latent defects. As between the parties, *Fisher* reasoned that obvious defects are waived by the owner when he accepts the "defective performance by the contractor." (P. 213) We need not face the latent-patent question in the instant case, since the complaint specifically alleged a "concealed and latent defect of the floor and subsoil condition."

---

[2] "[P]rofessions . . . [i]n general, however, . . . may be described as occupations which provide highly specialized intellectual services. These occupations, at their best, possess three principal features: (1) a body of erudite knowledge, a set of attitudes, and a technique which are applied to the service of mankind through an educated group; (2) a standard of success measured by accomplishment in serving the needs of the people rather than by personal gain; and (3) a system of control over the practice of the calling and the education of its practitioners through associations and codes of ethics." *Encyclopedia Americana* (1965 ed.), Vol. 22, p. 632b. *See also:* 1 Wis. Adm. Code secs. A–E 4.003 (1) (a), (2) (a), and (3), discussing the architect's duty to the public and his performance of professional service to protect the health, safety, or the public welfare.

It would appear, however, that, to the extent that this problem is faced by this court in the future, it would more appropriately be dealt with in the framework of negligence and comparative negligence. If a defect is obvious, a jury might well find that a plaintiff was contributorily negligent in respect to a harm that was occasioned thereby. If the hazard were concealed or latent, it would be more difficult to assess contributory negligence to a plaintiff.

In *Fisher*, this court said it is no different in principle whether the negligence results in personal injury or property damage. It did not limit "property damage" to that occasioned by the cost of repairs or rebuilding. There was, however, no consideration of the question of economic loss, *i.e.*, loss of business and loss of profits that were occasioned, as the plaintiff claims, by the architect's negligence in the instant case.

Legal literature abounds in writing on the question of whether, in the *MacPherson* type of situation, there can be a recovery for economic loss as a result of a tort. As stated in a note in 66 Columbia L. Rev. (1966), 917, 929, *Economic Loss in Products Liability Jurisprudence,* "Negligence has proved to be among the least fruitful avenues for recovery of economic loss." However, we have held in Wisconsin:

"[A]s a general rule in tort actions there may be recovery for loss of profits if the plaintiff can show with reasonable certainty the anticipation of profit." *Krueger v. Steffen* (1966), 30 Wis. 2d 445, 450, 141 N. W. 2d 200.

We conclude, therefore, that, in accordance with the settled negligence law of this state, damages may be awarded for the economic loss alleged by the plaintiff if considerations of public policy do not intervene in the

particular case to prevent such liability.[3]  While it would appear that as a matter of law there may be recovery for some types of economic loss, we cannot say that there are not substantial reasons founded upon public policy which in the instant case would prevent the award of damages for that purpose. Nor is there information in the record before us to conclude that there are reasons why damages for economic loss ought not be awarded.

Because of the failure of both parties to present and discuss these important policy considerations and because this case is considered on demurrer, the disposition made in a similar situation in *Kornitz v. Earling & Hiller, Inc.* (1970), 49 Wis. 2d 97, 181 N. W. 2d 403, must be followed. As in *Kornitz,* the court in this case has an insufficient "factual basis for considering, evaluating and resolving the public policy issues involved." *Kornitz,* page 103.

We believe that the trial court had this disposition in mind when it overruled the demurrer and specifically referred to *Kornitz.* In overruling the demurrer, the trial judge found that there was a cause of action stated —that the complaint set forth that the defendant's acts as alleged therein were sufficient to state a cause of action for negligence, and that such negligence was a substantial factor in causing the plaintiff's harm. He reserved for trial the question of whether, if negligence and cause were proved, there were policy factors that should prevent the award of damages in whole or in part. A decision on the latter point will have to abide further consideration by the trial court.

*By the Court.*—Order affirmed.

---

[3] The general policy considerations to be applied are discussed in *Colla v. Mandella* (1957), 1 Wis. 2d 594, 598, 599, 88 N. W. 2d 345, and *Hass v. Chicago & North Western Ry. Co.* (1970), 48 Wis. 2d 321, 326, 327, 179 N. W. 2d 885.