Jacqueline DIXSON, a minor, by her Guardian ad Litem, Dale R. Nikolay and Kathryn Dixson, Plaintiffs,

v.

WISCONSIN HEALTH ORGANIZATION INSURANCE CORPORATION, Defendant,

Becky Mae CARSON and Allstate Insurance Co., Defendants-Third-Party Plaintiffs-Appellants-Petitioners,

v.

ORIENTAL INVESTMENT COMPANY, Third-Party Defendant,

MILWAUKEE COUNTY, Third-Party Defendant-Respondent.

Supreme Court

*No. 97–3816. Oral argument May 2, 2000.—Decided July 12, 2000.*

2000 WI 95

(Also reported in 612 N.W.2d 721.)

For the defendants-third party plaintiffs-appellants-petitioners there were briefs by *Michael A. Mesirow, Vicki L. Arrowood* and *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee, and oral argument by *Michael A. Mesirow*.

For the third party defendant-respondent there was a brief and oral argument by *Louis Edward Elder*, principal assistant corporation counsel, Milwaukee.

¶ 1. DIANE S. SYKES, J. This case raises the question of whether Milwaukee County, by virtue of its federally-mandated duty to inspect a rent assistance property, had a duty to test the property for the presence of lead-based paint. Two-year-old Jacqueline Dixson and her mother, Kathryn, sued their landlord, Becky Mae Carson, for injuries Jacqueline suffered as a result of ingesting lead-based paint, allegedly in the duplex they rented from Carson. Shortly before Jacqueline's diagnosis, and pursuant to federal regulations, the apartment had been inspected by Mil-

waukee County's Rent Assistance Program, which found that the apartment "appeared to be in compliance" with HUD lead-based paint regulations.

¶ 2. Carson and her insurer impleaded Milwaukee County for contribution, alleging that the County was negligent in its performance of the inspection. The County moved for summary judgment, and the circuit court granted the motion, concluding that the County had no duty to inspect or test for lead-based paint. The court of appeals affirmed. We conclude that the County's federally-mandated duty to inspect the rent assistance property in this case did not include the duty to test for the presence of lead-based paint. Accordingly, we affirm.

¶ 3. The relevant facts are from the pleadings and the affidavit of the County's rent assistance program coordinator. They are as follows. Sometime in 1989, Kathryn Dixson and her two-year-old daughter, Jacqueline, moved into a duplex owned by Becky Mae Carson located at 3414 North 23rd Street in Milwaukee. At the time, Dixson participated in a federal Department of Housing and Urban Development (HUD) rent assistance program administered by Milwaukee County.

¶ 4. Dixson informed the county rent assistance program coordinator of her move in February 1990. At that time, the County required Dixson to read and sign a lead-based paint notice. The notice contained a general warning to participants in the program of the dangers of lead-based paint. It also advised tenants living in properties built before 1978 to ask their landlords about the presence of lead-based paint.

¶ 5. Pursuant to 24 C.F.R. § 882.109 (1990),[1] Milwaukee County conducted an inspection of the Dixsons' unit on June 22, 1990. The inspector completed a 26-item inspection form, which instructed the inspector to put a check mark next to all items that were "okay." One of the items checked as "okay" stated:

> The dwelling unit appears to be in compliance with HUD Lead Based Paint regulations, 24 C.F.R., part 35 of the title, issued pursuant to the Lead Based Paint Poisoning Prevention Act, 42 U.S.C. 4801. The Owner may be required to provide a certification that the dwelling is in accordance with such HUD regulations.

Both the county inspector and Kathryn Dixson signed the inspection form. Next to the inspector's signature, the form stated, "I hereby certify that I have inspected this dwelling unit and have determined that to the best of my knowledge it complies with the requirements of Section 882.109 of 24 C.F.R. Part 882 on 6–22–90."

¶ 6. Sometime in the fall of 1990 Jacqueline Dixson was diagnosed with lead poisoning. Kathryn Dixson and Dale Nikolay, Jacqueline's Guardian ad Litem, filed suit against Carson and her insurer, Allstate Insurance Company (collectively, Carson), seeking damages for injuries Jacqueline suffered as a result of her ingestion of lead-based paint, allegedly in the duplex.

¶ 7. On August 11, 1995, Carson impleaded Milwaukee County for contribution based upon the County's inspection of the Dixsons' duplex in connec-

---

[1] Unless otherwise noted, all further references to the Code of Federal Regulations are to the 1990 version.

tion with the rent assistance program.[2] The plaintiffs then amended their complaint to name the County as a defendant.

¶ 8. The County moved for summary judgment, arguing that it had no legal duty to conduct tests for lead-based paint. The County argued that the duty to test for lead-based paint rested with the landlord and could not be shifted to the County by virtue of its duty under the rent assistance program to conduct quality inspections of participating rental units.

¶ 9. The County relied upon an affidavit from Kim Jines, the Rent Assistance Program Coordinator. The affidavit stated that under the program, the County had no duty to test participating properties for lead-based paint. At most, the County had a "duty to conduct initial and annual quality inspections so as to provide decent, safe, and sanitary units."

¶ 10. The Circuit Court for Milwaukee County, the Honorable Arlene D. Connors, granted summary judgment in favor of the County, dismissing both Carson's third-party action and the Dixsons' direct claim. The court found that the County's rent assistance quality inspection was not a guarantee that no lead-based paint existed in the apartment, because the inspection report only stated that the property "appeared" to comply with pertinent HUD regulations regarding lead paint. Because Carson offered no evidence contradicting the County's affidavit disclaiming a duty to test for lead-based paint, the court found there was "no

_____

[2] Carson also impleaded Oriental Investment Company as a third-party defendant. Oriental owned property rented by Jacqueline's aunt where Jacqueline spent time and may have been exposed to lead-based paint. Dixson later amended her complaint to name Oriental as a defendant as well. The claims against Oriental are not at issue in this appeal.

basis on which to hold the County, as opposed to the property owner, liable for any of the plaintiffs' alleged injuries." The court also held that the Dixsons' action against the County was barred by their failure to file a notice of claim under Wis. Stat. § 893.80(1)(a) and (b) (1993–94).[3] The circuit court did not address the issue of whether Carson was also required to file a notice of claim as a prerequisite to the third-party action for contribution.

¶ 11. Carson appealed and the court of appeals affirmed in an unpublished decision. The court characterized the dispositive issue as whether the County "voluntarily assume[d] a duty to inspect for lead based paint," citing *Nischke v. Farmers & Merchants Bank & Trust*, 187 Wis. 2d 96, 113, 522 N.W.2d 542 (Ct. App. 1994), and Restatement (Second) of Torts § 323 (1965). The court of appeals concluded that there had been no assumption of duty, because the inspection report merely advised that the apartment "appeared" to comply with HUD regulations regarding lead paint.

¶ 12. We accepted review on the issue of the County's duty to inspect or test for lead-based paint. However, the case presents an initial jurisdictional question of whether Carson was required to file a notice of claim pursuant to Wis. Stat. § 893.80, and after oral argument we asked for additional briefing on the notice of claim issue. We conclude that Carson was not required to file a notice of claim under § 893.80 because a claim for contribution is a contingent claim not subject to the 120-day notice of claim requirement in the statute. We also conclude that the requirement that the County inspect the rent assistance property did not carry with it a duty to test for lead-based paint.

[3] Unless otherwise noted, all further references to the Wisconsin Statutes are to the 1993–94 version.

Therefore, summary judgment was appropriate, and we affirm.

¶ 13. The threshold jurisdictional issue requires us to determine whether the notice of claim requirement of Wis. Stat. § 893.80 applies to third-party claims for contribution. Section 893.80 provides in pertinent part:

> 893.80 Claims against governmental bodies or officers, agents or employes; notice of injury; limitation of damages and suits. (1) Except as provided in subs. (1g), (1m), (1p) and (8), no action may be brought or maintained against any. . .governmental subdivision or agency thereof nor against any officer, official, agent or employe of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

> (a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employe under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the. . .subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant. . .subdivision or agency or to the defendant officer, official, agent or employe. . . .

¶ 14. Carson's claim against Milwaukee County is for contribution. A cause of action for contribution is separate and distinct from the underlying cause of

action. *State Farm Mut. Auto. Ins. Co. v. Schara*, 56 Wis. 2d 262, 264, 201 N.W.2d 758 (1972). It does not accrue with the underlying claim. It is a contingent claim that becomes an enforceable right only when one joint tortfeasor pays more than his or her proportionate share of the damages. *Id.* at 266.

¶ 15. Wisconsin Stat. § 893.80 requires a notice of claim to be filed within "120 days after the happening of the event giving rise to the claim." We have previously held the state employee notice of claim statute inapplicable to contingent claims for contribution, because the event giving rise to a contingent claim—the tortfeasor paying more than his or her share of the damages—typically occurs long after the event giving rise to the underlying claim. *Coulson v. Larsen*, 94 Wis. 2d 56, 59, 287 N.W.2d 754 (1980).

¶ 16. In *Coulson* we interpreted Wis. Stat. § 895.45 (1975–76), the notice of claim statute pertaining to claims against state officers or employees.[4] There, the defendants brought a third-party claim for contribution against certain state employees without first filing a notice of claim on the attorney general as required by the statute. The state argued lack of jurisdiction due to noncompliance with the statute. We

---

[4] Wisconsin Stat. § 893.45 (1975–76) provided:

(1) No civil action or civil proceeding may be brought against any state officer, employe or agent for or on account of any act growing out of or committed in the course of the discharge of such officer's employe's or agent's duties, unless *within 90 days of the event causing the injury, damage or death* giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of the persons involved, including the name of the state officer, employe or agent involved (emphasis added).

noted the statutory language requiring notice of claim "within 90 days of the event causing the injury, damage or death" and concluded that the legislature did not contemplate the application of the statute to claims for contribution because their contingent or inchoate nature made compliance with such time limits impractical. *Id.* at 59. *See also State Farm,* 56 Wis. 2d at 262; *Geiger v. Calumet County,* 18 Wis. 2d 151, 118 N.W.2d 197 (1962); *Ainsworth v. Berg,* 253 Wis. 438, 34 N.W.2d 790, 35 N.W.2d 911 (1948).

¶ 17. Wisconsin Stat. § 895.45 (1975–76) was replaced by Wis. Stat. § 893.82 and later amended in response to *Coulson* to specifically require a notice of claim where contribution or indemnification is sought from state employees. 1983 S.B. 83. Section 893.82(3) provides that no "civil action or civil proceeding may be brought against any state officer, employe or agent. . .unless within 120 days of the event causing the injury, damage, or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim. . . ." Section 893.82(2)(c) specifically defines "damage or injury" as including "any physical or mental damage or injury or financial damage or injury resulting from claims for contribution or indemnification." The statute further provides that, in the case of a claim for contribution or indemnification, the "event" giving rise to the claim is the "underlying cause of action." Wis. Stat. § 893.82(4)(a). But the statute provides an exception: if the tortfeasor making the claim for contribution or indemnification "had no actual or constructive knowledge of the underlying cause of action at the time of the event," the 120-day time period begins when actual or constructive knowledge is acquired or the claim for contribution or

indemnification accrues, whichever is earlier. Wis. Stat. § 893.82(4)(b).

¶ 18. Thus, in Wis. Stat. § 893.82, the legislature clearly demonstrated its intention that claims for contribution or indemnification against *state employees* are subject to the notice of claim requirement. Significantly, however, there is no reference whatsoever to claims for contribution in Wis. Stat. § 893.80, which applies to claims against other governmental bodies. Accordingly, we conclude that the legislature did not intend § 893.80 to apply to claims for contribution.

¶ 19. *DNR v. City of Waukesha,* 184 Wis. 2d 178, 515 N.W.2d 888 (1994), and *City of Racine v. Waste Facility Siting Board,* 216 Wis. 2d 616, 575 N.W.2d 712 (1998), both cited by the County in support of the requirement of a notice of claim here, are distinguishable. Each involved a recognizable, accrued, non-contingent claim (an action for injunctive relief in *City of Waukesha* and a declaratory judgment action in *City of Racine*) as opposed to a contingent claim such as one for contribution. Neither case undermines our conclusion that Wis. Stat. § 893.80 was not intended to apply to contingent claims for contribution. Carson was not required to file a notice of claim before impleading the County for contribution.

¶ 20. The jurisdictional question thus resolved, we reach the substantive issue in the case: whether the County, by virtue of the federally-mandated inspection of the rent assistance property in this case, had a duty to test for lead-based paint. We conclude that it did not.

¶ 21. A cause of action for negligence requires: 1) a duty of care on the part of the defendant, 2) a breach of that duty, 3) a causal connection between the con-

duct and the injury, and 4) an actual loss or damage as a result of the injury. *Peters v. Menard, Inc.*, 224 Wis. 2d 174, 192, 589 N.W.2d 395 (1999) (quoting *Rockweit v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995)). The focus here is on the first element: whether the County had a duty of care regarding lead paint inspection and testing.

¶ 22. We start from the general premise that " 'the duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. . . .' " *Rockweit*, 197 Wis. 2d at 419–20 (quoting *A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483–84, 214 N.W.2d 764 (1974)). Carson argues that the County's duty of ordinary care in this case included the requirement of inspecting and testing for lead-based paint under the "Good Samaritan" rule expressed in Restatement (Second) of Torts § 324A (1965).[5] Essentially, this rule requires one who

---

[5] Section 324A. Liability to Third Person for Negligent Performance of Undertaking.

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or third person upon the undertaking.

The use of the word "protect" in the introduction is apparently a typographical error and should instead read "perform."

voluntarily assumes a duty that is necessary for the protection of another to exercise ordinary care in the performance of the duty, if the circumstances are such that the failure to do so increases the risk of harm to another. Carson contends that because the County undertook an inspection of the duplex, it voluntarily assumed the duty to test for, treat and/or eliminate the hazards of lead-based paint.

¶ 23. Carson misconstrues the federal regulations that require the County, in its role as administrator of the rent assistance program, to inspect properties occupied by rent assistance recipients. Although the applicable line item on the County's inspection form certified that the Dixsons' unit "appeared to comply" with the provisions of 24 C.F.R. Part 35, the overall inspection was conducted pursuant to 24 C.F.R. § 882.109. Each of these sections of the federal code provides for slightly different inspections, but neither section requires the County to test for, treat or eradicate lead-based paint under the circumstances of this case.

¶ 24. Two subparts of 24 C.F.R. Part 35 appear to be relevant to our inquiry. Subpart A concerns notification to purchasers and tenants of HUD-associated housing constructed prior to 1978. The purpose of the subpart is to establish procedures to assure that all purchasers and tenants of HUD-associated housing are notified of the hazards of lead-based paint, the symptoms and treatment of lead paint poisoning, and the importance and availability of maintenance and removal techniques for eliminating lead paint hazards. 24 C.F.R. § 35.1.

---

*Miller v. Bristol-Myers Co.*, 168 Wis. 2d 863, 883 n.7, 485 N.W.2d 31 (1992).

¶ 25. To this end, purchasers and tenants of HUD-associated housing are required to be notified of the following: 1) whether the property was constructed prior to 1978, 2) that the property may contain lead-based paint, 3) the hazards associated with lead-based paint, 4) the symptoms and treatment of lead-based paint poisoning, and 5) the precautions to be taken to avoid lead-based paint poisoning. The provisions of this section clearly impose on rent assistance program administrators a requirement of *notification only*, not a duty to inspect or test painted surfaces for the presence of lead-based paint. The County complied with these provisions when it gave Kathryn Dixson the information on lead-based paint and told her to check with her landlord.

¶ 26. The other relevant provision in 24 C.F.R. Part 35 is subpart C, which is the only provision in Part 35 that specifically mentions an inspection. It provides that "all applicable surfaces of HUD-associated housing constructed prior to 1978 shall be inspected to determine whether defective paint surfaces exist." 24 C.F.R. § 35.24(b)(1). A defective paint surface is defined as "an applicable surface on which the paint is cracking, scaling, chipping, peeling or loose." 24 C.F.R. § 35.22. It is neither stated nor implied that the County or other program administrator must inspect or test for lead-based paint. All that is required is a visual inspection of painted surfaces to detect any irregularities or defects in the surface that might require follow-up testing, treatment or eradication.

¶ 27. When an inspection is conducted pursuant to 24 C.F.R. § 882.109, the entire subpart C of Part 35 is superceded and replaced by 24 C.F.R. § 889.109(i). The regulations direct that in the case of a unit constructed before 1978, for a family that includes a child

under the age of seven years, the initial inspection and each periodic inspection "shall include an inspection for defective paint surfaces." 24 C.F.R. § 882.109(i)(3). As in 24 C.F.R. Part 35, defective paint surfaces are defined as "paint on applicable surfaces that is cracking, scaling, chipping, peeling or loose." 24 C.F.R. § 882.109(i)(2). Therefore, in this provision, as in 24 C.F.R. Part 35, the duty imposed on the administrator of the rent assistance program is a duty to conduct a visual inspection for faulty paint surfaces, not to inspect or test for lead-based paint.

¶ 28. The federal regulations *do* contain a provision that requires the County to conduct lead-based paint testing, but it does not apply to the circumstances presented here. 24 C.F.R. § 882.109(i)(4) provides that:

> In the case of a unit constructed prior to 1978, for a Family which includes a child under the age of seven years with an identified EBL condition [excessive absorption of lead—a confirmed concentration of lead in whole blood of 25 ug/dl or greater], the initial inspection under s 882.209(h)(1), or a periodic inspection under s 882.211(b), shall include a test for lead-based paint on chewable surfaces [all chewable protruding painted surfaces up to five feet from the floor or ground, which are readily accessible to children under seven years of age, e.g., protruding corners, windowsills and frames, doors and frames, and other protruding woodworks].

24 C.F.R. § 882.109(i)(4). Thus, the federal regulations only impose a duty to test certain surfaces for lead paint if the family occupying the unit being inspected has a child under the age of seven years who *already* has elevated levels of lead in his or her blood. Carson has submitted no evidence that Jacqueline Dixson had elevated lead levels at the time the County conducted

the inspection of the duplex. Therefore, the applicable Code provisions requiring the County to inspect the property do not include a requirement that the County test for the presence of lead paint, only that it visually inspect the paint surfaces for cracking, peeling and the like.

¶ 29. While a standard of ordinary care may under certain circumstances be defined by legislation or government regulations, *see Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 658, 476 N.W.2d 593 (Ct. App. 1991), and Restatement (Second) of Torts § 286 (1965), we cannot conclude that the regulations in this case required the County to test for lead-based paint. The regulations clearly require lead-based paint testing only under very specific circumstances not present here. Furthermore, there is no evidence that the County voluntarily undertook to test for lead-based paint, and so the "Good Samaritan" rule of the Restatement § 324A does not apply.

¶ 30. The County never stated or otherwise implied that the Dixsons' duplex had been tested and found to be free from lead-based paint. Rather, the inspection form signed by the County inspector and Kathryn Dixson stated that the premises "appeared" to comply with the provisions of 24 C.F.R. Part 35, and that the unit complied with the requirements of 24 C.F.R. § 882.109, which did not mandate testing under these circumstances. By this statement on the inspection form, the County was only representing that its inspection revealed no "cracking, scaling, chipping, peeling or loose" paint in the duplex. Carson has not introduced evidence to the contrary, and the other items on the inspection report indicate that the paint surfaces were not defective. As the court of appeals noted, the use of the word "appear" on the inspection

164

form indicates that the inspection "merely alerts the reader that a visual inspection revealed no obvious violation" of the HUD regulations, which were limited to a visual inspection for "defective paint surfaces."

¶ 31. Furthermore, the inspection form clearly warned that the responsibility for any lead-based paint on the property rested with the landlord; it stated that the property owner "may be required to provide a certification that the dwelling is in accordance with such HUD Regulations." The County also warned participants in the rent assistance program that if they lived in a rental unit built before 1978, they should ask their landlord about the presence of lead-based paint.

¶ 32. The law of this state places the responsibility for lead paint testing on the property owner. In *Antwaun A. v. Heritage Mutual Insurance Co.*, 228 Wis. 2d 44, 62, 596 N.W.2d 456 (1999), we concluded that a duty to test for lead-based paint arises whenever the landlord of a residential property constructed before 1978 either knows or should know that there is peeling or chipping paint in the property. We see no justification for shifting the duty to test for lead paint from the property owner to the County based upon federal regulations that impose upon the County a limited duty to inspect for deteriorating paint surfaces in properties leased by rent assistance recipients. To impose such a wholesale shift of responsibility would create two classes of property owners—one that has a duty to test for lead-based paint under *Antwaun A.*, and another that is relieved of that duty because it leases to tenants who receive federal rent assistance through Milwaukee County or any other public housing authority.

¶ 33. Therefore, we conclude that when Milwaukee County conducted an inspection of the Dixsons'

duplex pursuant to the federal rent assistance program regulations, it did not assume a duty to test for lead-based paint. The obligation of testing for lead-based paint was neither imposed upon the County by the regulations, nor required by the standard of ordinary care because of a voluntary assumption of duty. Accordingly, summary judgment was appropriately granted dismissing Carson's claim for contribution against the County.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 34. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. The majority opinion unduly narrows the third-party plaintiffs' claim against Milwaukee County and, as a result, dismisses the claim, concluding that the County had no duty to inspect the plaintiffs' apartment for lead-based paint. Because such a conclusion, even if accurate, does not resolve the case, I dissent.

¶ 35. As the majority opinion properly notes (majority op. at ¶ 2), the third-party complaint alleged that the county was negligent in its inspection of the plaintiffs' apartment, and that such negligence was a proximate cause of the plaintiffs' injuries. The County subsequently made a motion for summary judgment, on two separate grounds. First, the County argued that it could not be liable for injuries suffered by the plaintiffs since the plaintiffs did not rent an apartment owned by the County. Second, the County asserted that the action should be dismissed for failure to prosecute because the plaintiffs and the third-party plaintiffs had failed to show up at a scheduled deposition at which counsel for the County appeared. The County included

as a part of its motion for summary judgment an affidavit from Kim Jines, the County Rent Assistance Program Coordinator. The affidavit stated that the County had a duty to "conduct initial and annual quality inspections so as to provide decent, safe, and sanitary units." However, the affidavit stated that there is "no requirement by law that the County conduct lead poisoning tests."

¶ 36. Both the plaintiffs and the third-party plaintiffs responded to the defendants' motion for summary judgment. The plaintiffs argued that summary judgment was not appropriate because the County had conceded that it had a duty to inspect the apartment and that it was a question for the jury to determine whether the inspection was negligent and the cause of the plaintiffs' injuries. The third-party plaintiffs' motion in opposition to the defendants' motion for summary judgment similarly argued that such relief was not appropriate because "[t]here clearly exists an issue of fact as to whether Milwaukee County was negligent in its inspection of the home. . . ."

¶ 37. The third-party plaintiffs' brief included an affidavit from the third-party plaintiffs' attorney. The affidavit included portions of the transcript of the plaintiffs' deposition, in which a plaintiff testified that a representative from the County had inspected the apartment on two separate occasions and had not mentioned anything about lead-based paint. The third-party plaintiffs also included the inspection form that the Milwaukee County Department of Public Works had filled out and signed, certifying that the plaintiffs' apartment complied with the standards listed therein.

¶ 38. The County subsequently filed a motion entitled "motion to dismiss." That motion asserted that the affidavit submitted by the attorney for the third-

party plaintiffs should be disregarded because it was hearsay, and that the inspection form included should also be disregarded because it was not authenticated pursuant to chapter 909 of the Statutes. The motion also sought the dismissal of the claim against the County based on the statute of limitations and the notice of claims statute. These issues are not relevant for the purpose of this dissent.

¶ 39. The circuit court dismissed the third-party action against Milwaukee County because the inspection report only stated that the apartment "appeared" to comply with the pertinent HUD regulations regarding lead-based paint. The circuit court held that the third-party plaintiffs had not submitted any evidence to refute the contention made in the affidavit of the Coordinator that the County did not have a duty to test for lead-based paint.

¶ 40. The court of appeals affirmed, utilizing a similar rationale. The court of appeals characterized the dispositive issue as whether the "county voluntarily assume[d] a duty to inspect for lead-based paint." The court of appeals held that no assumption of duty had taken place, since the inspection form merely stated that the apartment "appeared" to comply with the regulations. The court of appeals further held that the third-party plaintiffs had failed to submit any evidence to suggest that the inspection report was erroneous in its limited assertion that the apartment appeared to comply with the federal lead-based paint regulations.

¶ 41. This court's majority opinion agrees with the circuit court and court of appeals, which held that the federal regulations do not create an affirmative duty on the County to inspect for lead-based paint. Rather, according to the majority, the regulations cre-

168

ate a duty on the County to conduct a "visual inspection for faulty paint surfaces." Majority op. at ¶ 27.[1] On the basis of the inspection form and the federal regulations, the majority opinion concludes that the County did not state or otherwise imply that the apartment was free of lead-based paint; the County stated only that the apartment appeared to comply with the federal regulations. The majority further states that because the third-party plaintiffs did not submit evidence suggesting that the County breached its duty to conduct a visual inspection for faulty paint, summary judgment for the defendants is appropriate. Majority op. at ¶ 30.

¶ 42. In my view the majority opinion's analysis of the claim against the County is faulty. The majority examined whether the County voluntarily undertook an affirmative duty to test for lead-based paint or whether such a duty arises from the federal regulations. Majority op. at ¶ 20. But neither of these analyses reflects Wisconsin's well-established negligence law. In Wisconsin, as this court has repeatedly explained, the first element of a negligence claim is a duty of care, and that duty is established under state law whenever it is foreseeable to the defendant that his or her act or omission to act might cause harm to some other person. At the very least, every person is subject to a duty to exercise ordinary care in all of his or her activities. This court has not adopted the Restatement's provisions regarding the voluntary assumption of duties in evaluating negligence claims. Instead, the general framework governing the duty of care in Wisconsin negligence actions is as follows: A person is

_____

[1] Although the majority opinion continually uses the words "visual inspection," the federal regulations refer to "an inspection"; it is not specifically limited to a visual inspection.

negligent when he or she fails to exercise ordinary care. Ordinary care is the care that a reasonable person would use in similar circumstances. A person is not using ordinary care and is negligent if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property. In Wisconsin, failure to take an affirmative action may constitute negligence when that failure is inconsistent with the duty to exercise ordinary care. *Gritzner v. Bubner*, 2000 WI 68 at ¶¶ 20–23, 235 Wis. 2d 781, 611 N.W.2d 906.[2]

¶ 43. Thus the ultimate question in this case is not whether the County voluntarily undertook an affirmative duty to inspect but whether, under all the circumstances, the County did not exercise with due care when it inspected the apartment and represented to both the landlord and prospective tenant that the unit appeared to comply with HUD regulations related to lead-based paint. [3]

¶ 44. The third-party complaint against the County was not based solely on the County's failure to

---

[2] As the *Gritzner* opinion went on to discuss, "even when a duty of care exists and the other elements of negligence have been established, public policy considerations may preclude liability." *Gritzner v. Bubner*, 2000 WI 68 at ¶ 24, 235 Wis. 2d 781, 611 N.W.2d 906. However, there has been no argument of such a public policy limitation in this case.

[3] The Wisconsin Jury Instructions make clear that:

A person is negligent when [he or she] fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

test for lead-based paint; the complaint alleged that the safety inspection conducted by the County was negligent. The third-party complaint alleged that the inspection was negligent specifically in that it failed to disclose or reveal the existence of lead-based paint. But that was only one of the ways in which the County's inspection could have been negligent. The County's inspection could have been negligent in that it failed to detect chipping or faulty paint or other outward signs of lead-based paint dangers.

¶ 45. The majority opinion concludes that the negligence claim was properly dismissed on summary judgment because the third-party plaintiffs did not submit evidence suggesting that the County breached its duty to conduct a visual inspection for faulty paint. Majority op. at ¶ 30. This conclusion is in error because the County did not move for summary judgment on the grounds that its inspection had not been negligent. Rather, the County's summary judgment motion (and subsequent "motion to dismiss") was based on the limited premise that the County did not have a duty to inspect for lead-based paint because the County did not own the apartment. As the third-party plaintiffs argue in their brief to this court, a motion for summary judgment based on the lack of a legal duty because of lack of ownership does not require the non-movants to present factual evidence as to the inadequacies of the inspection.

¶ 46. I would remand this cause to the circuit court for a determination of whether, under all the circumstances, the County exercised due care in its inspection and representation. If the County wishes to

---

Wis JI—Civil 1005. *See also Rockweit v. Senecal*, 197 Wis. 2d 409, 419, 541 N.W.2d 742 (1995) ("Each individual is held, at the very least, to a standard of ordinary care in all activities.").

file a summary judgment motion based on the lack of evidence that it failed to conduct its inspection in violation of due care, it may do so. We should not create such a motion for the County and by doing so refuse to give the third-party plaintiffs an opportunity to refute it.

¶ 47. For the reasons stated, I dissent.