Hoida, Inc., Plaintiff-Appellant,†

v.

M&I Midstate Bank and McDonald Title Company, Inc., Defendants-Respondents,

William C. Herbert, Defendant-(In T.Ct.).

Court of Appeals

*No. 03–2108. Submitted on briefs May 6, 2004.—Decided September 16, 2004.*

2004 WI App 191

(Also reported in 688 N.W.2d 691.)

† Petition to review granted 12-15-2004.

707

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Scott R. Halloin* of *Mallery & Zimmerman, S.C.*, Milwaukee.

On behalf of the defendant-respondent, McDonald Title Co., Inc., the cause was submitted on the brief of *William J. Ewald* of *Denissen, Kranzush, Mahoney & Ewald, S.C.*, Green Bay.

On behalf of the defendant-respondent, M&I Midstate Bank, the cause was submitted on the brief of *Russell T. Golla* of *Anderson, O'Brien, Bertz, Skrenes & Golla*, Stevens Point.

A nonparty brief was filed by *John E. Knight, James E. Bartzen, Kirsten E. Spira* of *Boardman, Suhr, Curry & Field LLP*, Madison, for Wisconsin Bankers Association.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. DYKMAN, J. Hoida, Inc., appeals from a summary judgment granted to McDonald Title Co., Inc., and M&I Midstate Bank. Hoida, a construction subcontractor on a Plover, Wisconsin, building project, incurred losses when the prime contractor, Packard Construction, Inc., failed to pay Hoida for materials it supplied to Packard. Hoida seeks to hold M&I, the construction lender on the project, and McDonald Title, M&I's disbursing agent, liable for these losses. It contends M&I and McDonald Title breached a duty of care owed to Hoida by failing to obtain lien waivers[1] and by continuing to fund draw requests without securing such waivers. Hoida asserts that this breach was a cause of its loss. The circuit court granted summary judgment to M&I and McDonald because it found that they did not owe a duty to Hoida. Though we disagree

---

[1] A lien waiver is a "written and signed waiver of a subcontractor's mechanic's lien rights, usu. submitted to enable the owner or general contractor to receive a draw on a construction loan." BLACK'S LAW DICTIONARY 1575 (7th ed. 1999).

with the circuit court's methodology, we affirm its judgment because we conclude that to allow Hoida to recover from M&I and McDonald for failure to obtain lien waivers would contravene public policy.

## STATEMENT OF FACTS

¶ 2. In October 1996, a corporation named The Villager at Nashotah entered into a construction loan agreement with M&I to build four eight-unit apartment buildings in Plover.[2] The agreement called for M&I to lend a total of $1,320,000.00 to The Villager, secured by four real estate mortgages. The loan agreement stated that M&I "shall not be responsible for any aspect of the [c]onstruction . . . or the procurement of lien waivers." An M&I vice president, Thomas Domaszek, was the loan officer for the project. The disbursing agent on the project was McDonald Title, owned by Robert McDonald.

¶ 3. The Villager hired Packard Construction, Inc., as the general contractor. In February 1997, Packard subcontracted with Hoida for prefabricated wooden wall sections and roof trusses. Packard submitted its first draw request in October 1996 for four draws of $50,500 each, for each of the four buildings. Domaszek paid the draw requests without obtaining lien waivers, although he testified that he told the owners that M&I would ultimately have to receive such waivers. McDonald paid the remaining draw requests, also without obtaining lien waivers.

---

[2] Consistent with summary judgment methodology, we present material facts from the pleadings, affidavits and depositions that permit the drawing of all reasonable inferences in favor of the non-moving party. *See Alvarado v. Sersch,* 2002 WI App 227, ¶ 2, 257 Wis. 2d 752, 652 N.W.2d 109, *rev'd on other grounds,* 2003 WI 55, 262 Wis. 2d 74, 662 N.W.2d 350.

¶ 4. Domaszek testified that it was contrary to M&I's usual practice to authorize the payment of draws before receiving lien waivers on previous draws. M&I concedes for the sake of the court's analysis that its failure to obtain lien waivers was contrary to its internal procedures and standards within the lending industry. McDonald also admitted that failure to procure lien waivers was contrary to accepted practice in Portage County.

¶ 5. Domaszek and McDonald became concerned when promised lien waivers did not arrive and progress on the project lagged behind the goals set forth in Packard's draw requests. On June 6, 1997, McDonald informed Packard that no more funds would be disbursed until M&I and McDonald received lien waivers totaling $786,118.72. Domaszek and McDonald's concerns proved well founded; Packard Construction and Michael Imperl, a principal of the Villager, had misappropriated or diverted $650,000 to $700,000 of the draws, by M&I's count. Imperl was subsequently indicted on multiple counts of bank fraud. The project's architect, William Herbert, averred that his signature was forged on several of the draw requests that were honored by M&I.

¶ 6. M&I assumed a greater role in the project after Packard defaulted, taking on Packard's role of approving work and processing subcontractor draws. M&I discovered that a disproportionate amount of the alleged theft came from the draws related to two of the buildings. As a result, two of the buildings stood near completion, while the other two were unfinished. M&I combined the financing of the four buildings and used the collateral of the nearly completed buildings to finance the construction of the two unfinished units.

711

¶ 7. In November of 1998, M&I obtained a judgment of foreclosure on the Villager's mortgages. Hoida also obtained a judgment against the Villager and its guarantors. M&I recovered its losses, but Hoida remained unpaid. Hoida estimates that it is owed $548,175.68. In May of 2001, Hoida sued M&I and McDonald. Hoida, M&I and McDonald each filed motions for summary judgment. The parties agreed that the issue was whether M&I and McDonald, in their respective capacities on the Villager project, owed any duties to Hoida. In a bench ruling, the circuit court concluded that "there has not been a duty shown whereby Hoida could recover."

## STANDARD OF REVIEW

¶ 8. We review a grant or denial of summary judgment de novo, and we use the same method as did the circuit court. *Cole v. Hubanks*, 2004 WI 74, ¶ 5, 272 Wis. 2d 539, 681 N.W.2d 147. This methodology requires a court to determine whether a claim has been stated, and then if a material issue has been presented. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We review all material facts, drawing all reasonable inferences in favor of Hoida, the nonmoving party. *See Garcia v. Mazda Motor Company*, 2004 WI 93 ¶ 4 n.3, 273 Wis. 2d 485, 682 N.W.2d 365.

## DISCUSSION

¶ 9. By concluding that M&I and McDonald had no duty to Hoida under which Hoida could recover, the circuit court determined that Hoida failed to state a cognizable claim. When considering the sufficiency of a

claim on summary judgment, "[w]e will reverse a decision granting summary judgment if the trial court incorrectly decided legal issues or if material facts were in dispute." *Mrozek v. Intra Financial Corp.*, 2004 WI App 43, ¶ 11, 271 Wis. 2d 485, 678 N.W.2d 264.

¶ 10. Hoida's complaint states negligence claims against M&I and McDonald. A plaintiff alleging negligence must prove: (a) the existence of a duty of care on the part of a defendant; (b) a breach of that duty of care; (c) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury; and (d) actual loss or damage resulting from the injury. *See, e.g., Gritzner v. Michael R.*, 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 611 N.W.2d 906. We therefore examine whether Hoida raises an issue of fact as to each of these elements, or if either party is entitled to summary judgment on the question of negligence.

¶ 11. We consider first whether M&I and McDonald owed a duty of care to Hoida. In Wisconsin, everyone owes a duty to all others to refrain from any act that will cause foreseeable harm to others. *Dixson v. WI Health Organization Ins. Corp.*, 2000 WI 95, ¶ 22, 237 Wis. 2d 149, 612 N.W.2d 721. Duty is the obligation of any person " 'to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act.' " *Rockweit v. Senecal*, 197 Wis. 2d 409, 419–20, 541 N.W.2d 742 (1995) (quoting *A.E. Investment Corp. v. Link Building, Inc.*, 62 Wis. 2d 479, 483–84, 214 N.W.2d 764 (1974)).

¶ 12. The circuit court concluded that M&I and McDonald did not owe Hoida a duty. We disagree.

Wisconsin courts rarely limit liability under a duty analysis. *See Gritzner*, 235 Wis. 2d 781, ¶ 24 n.4. Rather, courts more often limit liability by applying public policy factors. *Id.* "The consistent analyses of [the Wisconsin Supreme Court] reveal that the question of duty is not an element of the court's policy determination. It is, rather, an ingredient in the determination of negligence." *A.E. Investment Corp.*, 62 Wis.2d at 484.

¶ 13. Here, the circuit court limited liability because it did not favor "extending the law of negligence to deal with this kind of commercial environment," deciding instead "to maintain the fundamental distinction between tort and contract law."[3] It added that the Wisconsin Statutes already "establish[] a statutory scheme that create[s] rights and obligations" for subcontractors and lenders that courts should be reluctant to venture into. These may be valid policy reasons to limit M&I and McDonald's liability. But duty is a broad concept in Wisconsin, and usually does not limit a plaintiff's recovery.

¶ 14. M&I and McDonald owed Hoida the obligation "to refrain from any act which [would] cause foreseeable harm to Hoida." *Rockweit*, 197 Wis. 2d 419–20 (citation omitted). Here, the act (or failure to act) was the failure to procure lien waivers. M&I and McDonald witnesses stated that obtaining lien waivers was the industry standard, and that this was the usual practice of M&I and McDonald. Domaszek averred that it was inconsistent with M&I's policy to pay draws when

---

[3] Though this comment is consistent with the principles of the economic loss doctrine, *see Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233, the circuit court explicitly rejected application of the economic loss doctrine in this case.

lien waivers had not been obtained on previous draws. Robert McDonald averred that in Portage County, lien waivers are customarily obtained by disbursing agents before the funding of the next draw request. McDonald also averred that the guidelines and procedures of the insurance manual governing the title insurance issued for the project stated that "we should make every effort to obtain [lien] waivers *in full* wherever possible." It was foreseeable that the failure to obtain lien waivers could harm subcontractors, including Hoida. Therefore, we conclude that M&I and McDonald owed Hoida a duty of care.

¶ 15. Domaszek and McDonald admit in testimony to the second element of negligence, breach of duty; they acknowledge that lien waivers were not obtained. Hoida has also alleged the third element, causation. "A defendant's negligence is 'a cause' of a plaintiff's injury or damage if it was a substantial factor in producing the injury or damage." *Alvarado v. Sersch,* 2003 WI 55, ¶ 34 n.2, 262 Wis. 2d 74, 662 N.W.2d 350 (citation omitted). Had M&I and McDonald not funded draws after Packard failed to supply lien waivers, Packard and Imperl could not have diverted the draws. As a result, the project would have most likely come to a halt, and Hoida would not have furnished the material for which it was not paid.[4] M&I and McDonald's failure to obtain lien waivers meets the substantial factor test. Finally, no one disputes that Hoida has

---

[4] M&I argues that another possibility is that Packard and Imperl would have forged the lien waivers from the subcontractors, just as they forged Herbert's signature on the draw requests. M&I's argument is speculative and does not defeat Hoida's demonstration that M&I and McDonald's actions were a substantial factor in causing Hoida's injury.

suffered "actual loss or damage resulting from the injury," *Gritzner*, 235 Wis. 2d 781, ¶ 19 (citation omitted); it is out several hundred thousand dollars.

¶ 16. We conclude that Hoida has alleged each of the elements necessary to establish its negligence claim. In many cases, our analysis would end here and we would grant summary judgment to the plaintiff. However, we must consider public policy concerns. "After negligence has been found, a court may nevertheless limit liability for public policy reasons." *Alvarado*, 262 Wis. 2d 74, ¶ 17 (citation omitted).

■■■

¶ 17. Generally, the better practice is to submit a case to the jury before determining whether public policy considerations preclude liability. *Gritzner*, 235 Wis. 2d 781, ¶ 26. But Wisconsin appellate courts can, and do, decide public policy questions at summary judgment. *Stephenson v. Universal Metrics, Inc.*, 2002 WI 30, ¶ 42, 251 Wis. 2d 171, 641 N.W.2d 158. " '[W]here the facts presented are simple and the question of public policy is fully presented by the complaint and the motion for summary judgment, this court may make the public policy determination.' " *Smaxwell v. Bayard*, 2004 WI 101, ¶ 41, 274 Wis. 2d 278, 682 N.W.2d 923 (quoting *Sawyer v. Midelfort*, 227 Wis. 2d 124, 141, 595 N.W.2d 423 (1999)).

■■■

¶ 18. Denial of recovery on public policy grounds involves a case-by-case application of one or more of six nonexclusive factors.[5] We have recognized that public

---

[5] These factors, known as public policy or "X" factors, include: (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary

policy considerations unique to a given case may limit liability. *See Mrozek*, 271 Wis. 2d 485, ¶ 46; *see also Hicks v. Nunnery*, 2002 WI App 87, ¶ 34, 253 Wis. 2d 721, 643 N.W.2d 809, *review denied*, 2003 WI 16, 259 Wis. 2d 101, 657 N.W.2d 706. "Public policy is a broad, not easily defined concept. It embodies the community common sense and common conscience. Public policy is that principle of law under which freedom of contract or private dealings is restricted by law for the good of the community." *Merten v. Nathan*, 108 Wis. 2d 205, 213, 321 N.W.2d 173 (1982).

¶ 19. We begin our public policy analysis by considering the policies of the construction lien laws of Chapter 779 of the Wisconsin Statutes, which provide rights and remedies to construction subcontractors and material suppliers. A general purpose of these laws is to ensure the payment of construction project subcontractors and material suppliers. *See Kraemer Bros. v. Pulaski State Bank*, 138 Wis. 2d 395, 399–400, 406 N.W.2d 379 (1987). The legislative intent of the construction lien laws is "to protect the claims of [tradespersons], laborers and [material suppliers] for work or materials provided in the improvement of real property." *Fredrick Redi-Mix, Inc. v. Thomson*, 96 Wis. 2d 715, 726, 292 N.W.2d 648 (1980).

that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; and (6) allowing recovery would enter a field that has no sensible or just stopping point. *Fandrey v. American Family Mut. Ins. Co.*, 2004 WI 62, ¶ 1 n.1, 272 Wis. 2d 46, 680 N.W.2d 345.

¶ 20. To this end, a subcontractor or supplier may file a construction lien on the property on which it has performed the work. *See* Wis. Stat. § 779.01. " 'A construction lien is a remedy created by statute to insure payment to contractors, subcontractors, tradesmen, laborers, and materialmen who have furnished labor or materials in good faith for improvement of another's property.' " *Daughtry v. MPC Systems, Inc.*, 2004 WI App 70, ¶ 68, 272 Wis. 2d 260, 679 N.W.2d 808 (quoting *Mortgage Assocs, Inc. v. Monona Shores, Inc.*, 47 Wis. 2d 171, 186–87, 177 N.W.2d 340 (1970)).

¶ 21. Hoida concedes that Wisconsin law guarantees lenders priority lien status over subcontractors. Wisconsin Stat. § 779.01(4) provides that a construction lien "shall be prior to any lien which originates subsequent to the visible commencement in place of the work of improvement, except as otherwise provided by . . . [Wis. Stat. §] 706.11(1) and (1m)." The exception in § 706.11(1) establishes the priority status of certain mortgages over liens, including the priority of mortgages held by financial institutions. Paragraph (d) of § 706.11(1) gives "priority over all liens upon mortgaged premises and the buildings and improvements thereon" to "[a]ny mortgage executed to a state or national bank or to a state or federally chartered credit union."

¶ 22. Hoida asserts that this scheme creates a perverse incentive for lenders not to notify subcontractors when they encounter problems or risks with a contractor. If the lender contacts the subcontractor to inform it of potential difficulties, the subcontractor may stop working and file a lien, jeopardizing the lender's

security.[6] If the lender does nothing, the subcontractor will continue to work, thereby increasing the lender's security for repayment. Hoida observes that this increases the likelihood that the subcontractor will shoulder the loss.

¶ 23. Hoida asks us to create a remedy for its problem. We decline to do so. Under WIS. STAT. ch. 779, the legislature made a policy choice to provide protection to subcontractors and material suppliers on construction projects. It also elected, under WIS. STAT. §§ 779.01(4) and 706.11, to limit that protection in certain situations by providing priority status to lenders. Establishing for Hoida a new claim against M&I and McDonald would contravene the public policy choices of the legislature. "[T]he judiciary is limited to applying the policy the legislature has chosen to enact, and may not impose its own policy choices." *Fandrey v. American Family Mut. Ins. Co.*, 2004 WI 62, ¶ 16, 272 Wis. 2d 46, 680 N.W.2d 345 (citation omitted).

¶ 24. A subcontractor or material supplier may attempt to protect itself by filing a lien. We recognize that construction liens do not guarantee payment, but the legislature has balanced the interests of lenders and subcontractors, and we respect that balance.

¶ 25. Because we conclude that public policy precludes tort recovery for Hoida, we need not address whether the economic loss doctrine also limits liability. We also decline to consider Hoida's assertions that M&I misrepresented certain facts to it. As the circuit court held, Hoida did not plead a claim of misrepresentation. We will not consider an issue that was not properly

---

[6] This is because WIS. STAT. § 706.11(1m)(b) establishes that a draw upon a mortgage has priority status like the mortgage itself, unless prior to the payment of the draw "the mortgagee has actual knowledge of an intervening lien."

raised in the trial court. *See Estate of Scherffius*, 62 Wis.2d 687, 696-697, 215 N.W.2d 547 (1974).

*By the Court.*—Judgment affirmed.