LUTERBACH, and wife, Appellants, V. MOCHON, SCHUTTE,
HACKWORTHY, JUERISSON, INC., Respondent: GEN-
ERAL INSURANCE COMPANY OF AMERICA, Defendant.

*No. 76–005. Argued May 2, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 13.)

For the appellants there were briefs by *Ronald L. Piette* and *Craig W. Nelson* of Milwaukee, and oral argument by *Mr. Nelson.*

For the respondent there was a brief by *Chester J. Niebler* and *Niebler & Niebler* of Menomonee Falls, and oral argument by *Chester J. Niebler.*

BEILFUSS, C. J.  On March 6, 1969, defendant-respondent Mochon, Schutte, Hackworthy, Juerisson, Inc. (formerly Schutte-Mochon, Inc., hereinafter designated the architect), entered into an agreement with the Board of Education, School District No. 1, City of West Allis (the owner), to perform architectural services in connection with the erection of an addition to West Allis Central High School.  On April 23, 1971, the James Luterbach Construction Company, Inc. (the contractor), entered into an agreement with the owner to build the addition to West Allis Central.

Plaintiff-appellant Herbert F. Luterbach was employed as a carpenter for the contractor.  On July 30, 1971, Luterbach was injured on the construction site when a cave-in occurred while working in an excavation approximately 24 feet deep.  In a complaint filed against the architect, Luterbach alleged that the excavation was improperly shored and braced, and that his injuries were proximately caused by the negligence of the architect in, *inter alia,* failing to properly supervise the construction, failing to properly inspect the construction site, and failing to take steps to maintain the site in a safe manner.  As a result of his injuries, Luterbach claimed $1,000,000 damages.  His wife Susan Luterbach sought damages in the amount of $50,000 for loss of services, society, companionship and consortium.

The architect denied that its supervisory duties encompassed anything more than seeing that the completed structure met the contract terms.  It also interposed several affirmative defenses.  On August 29, 1975,

the architect filed a motion for summary judgment and accompanying affidavits. The architect's insurer, also a defendant, filed a similar motion. The Luterbachs did not file any affidavits in opposition.

The trial court granted the motion, without an opinion, on December 23, 1975. On March 19, 1976, the complaint against the insurance company was dismissed upon stipulation. Judgment was entered dismissing the complaint against the architect on March 30, 1976. The Luterbachs appeal.

The major issues before us are whether this was a proper case for disposition by summary judgment and, if so, whether the trial court was warranted in dismissing the action.

It must be noted that we are dealing with two contracts: the owner-architect agreement and the owner-contractor agreement. The basis for the Luterbachs' case lies in language found in the owner-contractor agreement. Although the architect would not normally be bound by a contract to which it is not a party, the Luterbachs point out that the owner-architect contract provided that the architect would prepare certain provisions of the owner-contractor agreement and would generally assist the owner in drafting the contract forms. Furthermore, the owner-architect agreement makes reference to the owner-contractor agreement in defining certain of the architect's duties. Thus, under these circumstances, we should consider the owner-contractor agreement together with the owner-architect agreement in determining the architect's duties.[1]

---

[1] On whether the owner-contractor agreement can be utilized to construe the owner-architect agreement, *compare: Walker v. Wittenberg, Delony & Davidson, Inc.,* 241 Ark. 525, 412 S.W.2d 621 (1966), reh. granted 242 Ark. 97, 412 S.W.2d 621 (1967), with *Reber v. Chandler High School Dist. #202,* 13 Ariz. App. 133, 474 P.2d 852 (1970).

We have many times stated that summary judgment is a drastic remedy which is proper only when there are no substantial issues of fact to be determined, when the evidence on a material fact is not in conflict, and when there are no permissible inferences from undisputed facts that would permit a different result.[2] Generally the construction of words and clauses in a contract is a question of law.[3] However, the construction of an ambiguous contract can present a question of fact and, as such, summary judgment is usually not appropriate.[4] A contract is ambiguous ". . . [w]hen the language of a contract, considered as a whole, is reasonably or fairly susceptible to different constructions. . . ." *Lemke, supra,* 35 Wis.2d at 432.

The basis for the Luterbachs' claim that the architect is liable for their injuries is Paragraph 36(a) of the owner-contractor agreement:

"ARCHITECT'S STATUS:
"(a) The Architect shall have general supervision and direction of the work. He is the agent of the Owner only to the extent provided in the contract documents and when in special instances he is authorized by the Owner so to act, and in such instances he shall, upon request, show the contract written authority. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the contract."

Taking the general duty of supervision, which includes the authority to stop the work "whenever such

[2] *Federal Deposit Ins. Corp. v. First Mortgage Investors,* 76 Wis. 2d 151, 154–155, 250 N.W.2d 362 (1977).

[3] *Zweck v. D P Way Corp.,* 70 Wis.2d 426, 435, 234 N.W.2d 921 (1975); *Garriguenc v. Love,* 67 Wis.2d 130, 135, 226 N.W.2d 414 (1975).

[4] *Lemke v. Larsen Co.,* 35 Wis.2d 427, 431, 151 N.W.2d 17 (1967); *Peninsular Carpets, Inc. v. Bradley Homes, Inc.,* 58 Wis. 2d 405, 416, 206 N.W.2d 408 (1973); *Patti v. Western Machine Co.,* 72 Wis.2d 348, 353, 241 N.W.2d 158 (1976).

stoppage may be necessary to insure the proper execution of the contract," the Luterbachs point to several provisions in the owner-contractor agreement which mandate that the work shall comply with the construction safety standards of the Department of Industry, Labor and Human Relations. There are also provisions wherein the *contractor* is specifically charged with taking the safety precautions necessary to protect the workers. Included in these provisions is an express statement that the *contractor* assumes the responsibility for the adequacy and safety of shoring and bracing. It is the appellants' position, however, that the architect is ultimately responsible for the accident because of his supervisory duty to see that the contract is carried out and his power to stop work if contrary to the contract provisions.

While it might be possible to find the owner-contractor agreement ambiguous, the general supervisory duties set forth therein are rendered unambiguous by the following language from the owner-architect agreement:

"4c. The Architect will make periodic visits to the site to familiarize himself generally with the progress and quality of the work and to determine in general if work is proceeding in accordance with the Contract Documents.

"During such visits and on the basis of his observations while at the site, he will keep the Owner informed of the progress of the work, will endeavor to guard the Owner against defects and deficiencies in the work of contractors, and he will condemn work as failing to conform to the Contract Documents.

"The Architect shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the work. . . ."

Viewing the contracts as a whole, we conclude that the Luterbachs' expansive definition of supervisory

powers cannot be accepted. The contracts are not ambiguous. The architect had no duties in regard to insuring the safety of the construction site; these were the duties of the contractor. Summary judgment was properly granted dismissing the complaint. Our conclusion is further fortified by the fact the Luterbachs failed to challenge the motion for summary judgment by counteraffidavits in the trial court.

Aside from the fact that the contract documents clearly refute the Luterbachs' position, we note our disagreement with a line of cases from other jurisdictions which recognize an architect's liability for nondesign-related injuries based on a general duty to supervise construction, including the power to stop work to see that it conforms to the contract.[5] The signal case on architect's liability based on supervisory duties is *Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630 (1967). Although that case may be distinguished because the contract did not so clearly preclude an architect's responsibility for construction site injuries, we disapprove of efforts to parlay general duties of supervision into a duty to insure the safety of construction sites.

This position is consistent with earlier cases by this court. In *Vonasek v. Hirsch & Stevens, Inc.*, 65 Wis.2d 1, 221 N.W.2d 815 (1974), the architect had a general supervisory power, including the power to stop the work should the construction fail to conform to the plans and specifications. The supervisory duty was limited, but not as limited as in the instant case. The court stated at p. 11:

"The contract does not make the defendant a supervisor of the project in the sense that he was responsible for the procedures adopted by the contractor. Defendant's obligations under the contract are primarily aimed at insuring the end product will comply with the plans

[5] *See:* Annot. 59 A.L.R.3d 869 (1974).

and be of good workmanlike quality. This does not involve the safety of the procedures utilized."

As in our case, the architect was only required to visit the site periodically. The court stated, at pp. 11–12, that:

"To hold otherwise would make the architect the general safety supervisor at the site, a job which would require his continuous presence in disregard of the express language of his contract." *See also: Smith v. Milwaukee Builders' & Traders' Exchange,* 91 Wis. 360, 365, 64 N.W. 1041 (1895).

The Luterbachs present two additional theories of liability: under the common law and under the safe place statute. Neither of these theories provides a basis for recovery in this case.

The court is not satisfied that there exists any common law duty which requires supervising architects to insure construction site safety, or that there is any reason to create such a duty.

The safe place analysis has more merit but also falls short. The Luterbachs contend that the safe place statute, sec. 101.11, applies and that the architect owed a duty thereunder to maintain the job site in a safe condition. They attempt to bring the architect within the statute by contending that it was an owner within the meaning of sec. 101.11 (2) (i), Stats.[6] Actual ownership

---

[6] "(i) The term 'owner' shall mean and include every person, firm, corporation, state, county, town, city, village, school district, sewer district, drainage district and other public or quasi-public corporations as well as any manager, representative, officer, or other person having ownership, control or custody of any place of employment or public building, or of the construction, repair or maintenance of any place of employment or public building, or who prepares plans for the construction of any place of employ-

is not necessary. Rather, ownership hinges on such factors as possession, control, dominion, or supervision.[7] The problem is to determine how much control or supervision constitutes *de facto* ownership.

In several recent cases this court analyzed a claim that a general contractor was an owner owing a duty to the injured employees of a subcontractor. *Barth v. Downey Co., Inc.*, 71 Wis.2d 775, 239 N.W.2d 92 (1976); *Lemacher v. Circle Construction Co., Inc.*, 72 Wis.2d 245, 240 N.W.2d 179 (1976). These cases do not support appellants' contention. The *Lemacher* court, at p. 249, cited Barth for the proposition that:

" 'There is no duty on the part of a general contractor to superintend the activities of the employee of a subcontractor. Ordinarily, as in the case of an owner hiring an independent contractor to do work on his building, the [general] contractor reserves no right or control of the work excepting that of inspection or of changing the plan with reference to the construction to be furnished. That alone is not enough to make such owner or such general contractor liable for a frequenter's injury while such frequenter was acting in the scope of his employment for someone other than such owner or general contractor. . . . The test our court has stated is whether the owner, or here the general contractor, "stood in the shoes of the [immediate] employer by reason of his retention of control of the premises." Even a retained right to check as to compliance with specifications, and to stop construction progress for lack of compliance with specifications, our court has held, is not an exercise of control over how the actual manner in which the specifications were complied with.' "

ment or public building. Said ss. 101.01 to 101.25 shall apply, so far as consistent, to all architects and builders."

[7] *Potter v. Kenosha*, 268 Wis. 361, 371, 68 N.W.2d 4 (1955); *Mennetti v. West Side Businessmen's Asso.*, 246 Wis. 586, 590, 18 N.W.2d 487 (1945).

*See also Berger v. Metropolitan Sewerage Comm.,* 56 Wis.2d 741, 750, 203 N.W.2d 87 (1973), where the court stated:

"The presence or absence of engineering inspectors, despite their authority to stop construction process for lack of compliance with the specifications, is not a manifestation of control. These employees merely enforce the contract."

The status of the architect as an owner is clearly refuted under the above standards by reference to the contract provisions. The general supervisory powers noted in the owner-contractor agreement cannot camouflage the limited nature of the architect's supervisory duties as set forth in the owner-architect contract. The architect is required to make only periodic visits to the site to determine whether the work is proceeding in accordance with the contract. And he is not responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the work. His power to halt the work if need be is not enough to demonstrate the requisite control required to prove ownership status.

The final matter before us concerns the Luterbachs' failure to print an adequate appendix. The appellants' appendix included only the trial court order and the complaint. As this case hinges primarily on contract interpretation, the contracts, or such parts as are pertinent, should have been included. Sec. 251.34(5)(b), Stats. The architect printed them in a supplemental appendix.

Appellants' appendix is deemed "wholly inadequate." *Younger v. Rosenow Paper & Supply Co.,* 63 Wis.2d 548, 557–58, 217 N.W.2d 841 (1974). The respondent is awarded double costs limited to the cost of printing its supplemental appendix.

*By the Court.*—Judgment affirmed; double costs to the respondent for the printing of its appendix.