Frederick C. KALTENBRUN, and Jacqueline Kaltenbrun, Plaintiffs-Appellants-Cross Respondents,

v.

CITY OF PORT WASHINGTON, Sentry Insurance, a mutual company, Defendants-Respondents,

DONOHUE & ASSOCIATES, INC., Defendant-Respondent-Cross Appellant,

GABE'S CONSTRUCTION COMPANY, INC., Continental Casualty Company, Don L. Burich, d/b/a Burich Excavating, and Blue Cross & Blue Shield United of Wisconsin, Defendants.

Court of Appeals

*No. 89–1196. Submitted on briefs March 8, 1990.—Decided May 9, 1990.*

(Also reported in 457 N.W.2d 527.)

On behalf of the plaintiffs-appellants-cross respondents, the cause was submitted on the briefs of *Robert J. Asti* and *H. Ben Levy* of *Levy & Levy, S.C.* of Cedarburg.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Clifford R. Haggenjos, Jr.* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the briefs of *Dale L. English* of *Colwin, Fortune, Colwin & English, S.C.* of Fond du Lac.

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J. Frederick C. Kaltenbrun appeals from a summary judgment dismissing his claims against the city of Port Washington for negligence and violation of the safe-place statute. Kaltenbrun also appeals from a second summary judgment dismissing similar claims against Donohue and Associates (Donohue). Donohue cross-appeals from that portion of the second judgment denying its motion for costs and reasonable attorney's fees pursuant to sec. 814.025, Stats. We find no error in the trial court's rulings and affirm the judgments.

The material facts are undisputed. In 1986, the city contracted with Donohue, an architectural firm, for the design of a water transmission main and booster pump station on city-owned property. This agreement also provided that Donohue would visit the site at appropriate intervals to determine if the construction met the contract terms.

By separate agreement, the city contracted with Gabe's Construction Company, Inc. (Gabe's) to construct the project. By this agreement, the city relinquished all control over the site, retaining only the right of inspection. This contract specifically provided that Gabe's was responsible for the methods used to complete the work and for implementing all safety precautions associated with the work. Gabe's subcontracted with Burich Excavating. Burich in turn employed Kaltenbrun to operate one of its dump trucks.

Kaltenbrun's job was to transport fill by dump truck from one part of the construction site to another. The water main was constructed down the middle of a twenty-foot-wide dirt path bordered by a forty-foot wall of rock and soil on the west side, and a forty-foot sheer drop on the east side. As the site was trenched, Kaltenbrun would back his dump truck up to the south end of the site to receive fill. He then would proceed from the site, travel through the city, reenter the site on the north end, turn around and back down the dirt path to back fill the trench. Kaltenbrun was beginning his second week on the job when he backed too close to the east edge of the path during the back-fill procedure. The edge gave way, sending Kaltenbrun and his truck over the side of the forty-foot drop. As a result of the accident, Kaltenbrun sustained serious injuries.

Kaltenbrun filed suit against the city, as owner; Donohue, as architect, designer and engineer; and Gabe's, as general contractor, alleging negligence and violation of the safe-place statute. All three defendants moved for summary judgment, and Donohue additionally requested costs and reasonable attorney's fees pursuant to sec. 814.025, Stats.

The trial court granted partial summary judgment to Gabe's; that aspect of the case is the subject of a

separate appeal and is not presently before us. *Kaltenbrun v. Gabe's Constr. Co.,* No. 89–1080, unpublished slip op. (June 27, 1990). As to the city and Donohue, the trial court determined that neither breached any statutory or common law duty of care owed to Kaltenbrun. The trial court also denied Donohue's request for costs and attorney's fees. Two judgments were entered: one dismissing Kaltenbrun's claims against the city and the other dismissing Kaltenbrun's claims against Donohue and denying Donohue costs and attorney's fees under sec. 814.025, Stats. Kaltenbrun appeals and Donohue cross-appeals.

## I. APPEAL

### A. COMMON LAW NEGLIGENCE

We begin with the trial court's rulings regarding the city's and Donohue's alleged negligence. The court determined that the city did not owe Kaltenbrun a common law duty because the dangerous condition of the cliff was open and obvious. The trial court also determined that Donohue had no common law duty with respect to the protection of the employees on the site since Donohue lacked control over the methods of construction and safety techniques.

Kaltenbrun argues that summary judgment was inappropriate because the undisputed facts give rise to reasonable inferences that the city and Donohue both owed him a common law duty of care. The question of duty, however, is not ultimately one of fact. Rather, the question of whether the city and Donohue owed Kaltenbrun a duty, and what the scope of that duty was, is a question of law. *Johnson v. Seipel,* 152 Wis. 2d 636, 643, 449 N.W.2d 66, 68 (Ct. App. 1989). We review such

questions independently of the trial court's conclusions. *Id.*

Negligence requires a duty of care on the part of the defendant, a breach of that duty, and an injury caused by the breach. *Id.* Duty is the exercise of reasonable care whenever it is foreseeable that one's conduct may cause harm to another. *Id.* at 644, 449 N.W.2d at 68. The essence of the duty to exercise reasonable care is not to refrain from doing a particular act, but rather it is the duty to act in a certain way—to exercise reasonable care—whenever it is foreseeable that one's conduct may cause harm to another. *Id.* This rule applies even though the nature of that harm and the identity of the harmed person may be unknown at the time of the act. *A.E. Inv. Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 483, 214 N.W.2d 764, 766 (1974).

## 1. The City's Duty

Kaltenbrun argues that the city owed him a duty of care because the city knew that heavy equipment would be required to accomplish the contract goals, and it was foreseeable to the city that use of this equipment on the elevated path would create a dangerous situation. Furthermore, Kaltenbrun contends that the city breached its duty when it failed to implement or supervise on-site safety measures. We reject these arguments.

At the outset, we note that the liability sought to be imposed here is not a vicarious one. Rather, Kaltenbrun charges the city with wrongdoing separate and distinct from that alleged against the general contractor. He argues that the city owed a duty of care directly to him as an employee of a subcontractor working on the project site. Kaltenbrun's theory is that the city, by its action

641

(or inaction), created a situation in which the natural, probable and foreseeable consequence was that someone would be injured in the manner he was.

We agree that once the city decided to construct the water main project it was obligated to exercise reasonable care in carrying out the project. That duty included not only the obligation of due care to refrain from any act which would cause foreseeable harm, but also the duty to take action when it was foreseeable that its actions may cause harm to another. *See Seipel,* 152 Wis. 2d at 644, 449 N.W.2d at 68. Once it became foreseeable that the project could be dangerous, the city had the duty to act in a certain way—to exercise reasonable care. *Id.* Whether the city exercised reasonable care is the issue in this case.

Kaltenbrun contends that the city's obligation was to have a representative on the site to supervise the general contractor's safety measures and to implement other safety measures if necessary. We disagree that this was the city's duty under the facts of this case.

The city had two courses of action available to accomplish the project: (1) it could do the work itself and implement necessary safety precautions; or (2) it could contract with someone else to carry out these duties. The city chose the latter course, contracting with Gabe's, an independent contractor. The city's contract with Gabe's relinquished control over the site to Gabe's (except for inspection purposes) and specifically obligated Gabe's to implement all safety precautions associated with the project. Such a duty properly may be imposed by contract. *See Rausch v. Buisse,* 33 Wis. 2d 154, 161, 146 N.W.2d 801, 805 (1966).

642

Kaltenbrun complains that this permits an owner to contract away its duty of care. We disagree. Rather, it simply recognizes that a party may discharge its duty to act with due care in an alternative manner—by turning the project over to a responsible independent contractor possessing the necessary knowledge and expertise who can *safely* perform the project. Independent contractors can bring to a project safety experience and expertise that the owner may lack. In some situations, an owner's attempt to carry out a project without the assistance of an independent contractor could constitute a failure to exercise reasonable care. We should not create a rule of law which discourages such contracts.

Accordingly, we conclude that an owner who has contracted with a reliable and qualified independent contractor to implement all safety precautions associated with the work has fulfilled its duty of reasonable care to those employees of the general contractor or those employed by subcontractors whom the general contractor has hired. Thus, the city's failure here to directly implement safety precautions on the site or to supervise the general contractor's safety obligations was not a breach of the city's duty to Kaltenbrun.

We note, however, that the mere making of such a contract does not automatically insulate an owner from liability. An owner may still breach the duty to act with due care if, for example, the owner fails to scrutinize the independent contractor's credentials prior to contracting. *See, e.g., Johnson v. Misericordia Community Hosp.*, 97 Wis. 2d 521, 530, 294 N.W.2d 501, 506 (Ct. App. 1980), *aff'd*, 99 Wis. 2d 708, 301 N.W.2d 156 (1981). Kaltenbrun, however, makes no such allegation against the city.

## 2. Donohue's Duty

Kaltenbrun next argues that Donohue, as a professional firm responsible for the design and engineering aspects of the project, owed him a duty to make the construction site safe by testing the soil, shoring up the eroding cliff and constructing a guardrail along the edge of the cliff. Kaltenbrun reasons that Donohue should have foreseen that the actual construction of the water main would pose a risk of harm or injury to the construction workers. In short, Kaltenbrun asserts that Donohue, because it designed and engineered the project, had the further duty to research and design safety measures for the construction site.

This argument is contrary to established case law. Our supreme court has stated: "The court is not satisfied that there exists any common law duty which requires supervising architects to insure construction site safety, or that there is any reason to create such a duty." *Luterbach v. Mochon, Schutte, Hackworthy, Juerisson, Inc.,* 84 Wis. 2d 1, 8, 267 N.W.2d 13, 16 (1978). Like the architect in *Luterbach,* Donohue was the designing architect and engineer with general supervisory powers arising out of its contract with the owner to insure that the work complied with the contract. *See id.* at 5–6, 267 N.W.2d at 15. Donohue also had no duties with regard to insuring the safety of the construction site; these were the duties of the contractor. *See id.* at 8, 267 N.W.2d at 16.

Kaltenbrun attempts to distinguish *Luterbach* as merely standing for the proposition that architects do not have the day-to-day responsibility to insure construction site safety. He concedes that day-to-day safety was not Donohue's responsibility. Instead, Kaltenbrun argues that he is moving beyond *Luterbach,* contending

644

that Donohue's duty arose at the design stage. Donohue, he asserts, had the responsibility to submit a design that included safety features for the areas adjacent to the design. In support, Kaltenbrun cites to the language of *A.E. Investment:* "[T]he duties of the profession cannot be undertaken on behalf of a client without an awareness and a responsibility to the public welfare." *A.E. Inv.,* 62 Wis. 2d at 488, 214 N.W.2d at 769.

*A.E. Investment,* however, extends an architect's liability only to injury caused by a defect in the *structure itself.* In *A.E. Investment,* the floor of the structure began to settle, resulting in damaged walls and an uneven floor. *Id.* at 482, 214 N.W.2d at 765. The architect had failed to perform subsoil tests and the plaintiff, a business, suffered economic injury as a result of the unstable building. *Id.* at 481–82, 214 N.W.2d at 765. The supreme court held that architects have a professional duty not to design unsuitable or unstable structures. *Id.* at 489, 214 N.W.2d at 769. In this case, Donohue's failure to perform subsoil tests or erect guardrails had nothing to do with the ability of the project to accommodate the water main installation. Furthermore, Kaltenbrun's injury did not occur as a result of any defect in the water main or its design.

We conclude that no common law duty existed which required Donohue to perform subsoil tests or design safety features for the site's ingress and egress routes to assure that those routes would withstand the travels of construction equipment. Absent a greater contractual assumption of duty, the effect of *Luterbach* and *A.E. Investment* is to limit an architect's common law liability to instances of unsafe or defective design of the structure itself. The common law of this state has yet to

645

extend that duty to safety on the construction site at large.

## B. SAFE-PLACE STATUTE

We turn next to the trial court's rulings regarding the city's and Donohue's liability under the safe-place statute, sec. 101.11, Stats. As to the city, the trial court found no liability under the safe-place statute because the city had no obligation or authority to supervise and control the project. As to Donohue, the court concluded that the safe-place statute was inapplicable because Donohue was neither an owner nor employer as required by the statute. We affirm both rulings.

### 1. City's Safe-Place Liability

The first issue is whether the city, as legal owner of the construction site, had a safe-place duty pursuant to the safe-place statute, sec. 101.11, Stats. A safe-place duty is imposed upon an owner only when there is retention of a right of control beyond mere legal ownership or right of inspection. *Couillard v. Van Ess,* 141 Wis. 2d 459, 463, 415 N.W.2d 554, 557 (Ct. App. 1987). Here the city entered into a contract with Gabe's which made Gabe's responsible for construction means, methods, and techniques, and for safety precautions and programs in connection with the work. The city retained only legal ownership and the limited right of inspection. Having retained no control beyond the right of inspection, the city had no duty under the safe-place statute. *Id.*

Kaltenbrun, however, contends that the city cannot escape liability under sec. 101.11, Stats., simply because it no longer retained requisite control. He argues, despite

646

*Couillard,* that the city is liable under the safe-place statute because it relinquished control of the premises in an unsafe condition. Without deciding whether such conduct is actionable under common law, we conclude that it is not actionable under the safe-place statute.

Wisconsin's safe-place statute obligates an owner to "construct, repair or maintain such *place of employment . . .* as to render the same safe." Sec. 101.11(1), Stats. (emphasis added). Kaltenbrun's argument overlooks that when the city turned the property over to Gabe's, the property was not, as yet, a place of employment. At all times when this construction site could be denominated a "place of employment" under the safe-place statute, the city had no right of control beyond mere legal ownership or right of inspection. Under such circumstances, *Couillard* mandates that the city cannot be an "owner" under the safe-place statute.

## 2. Donohue's Safe-Place Liability

Similar to the discussion just completed, Kaltenbrun also argues that the safe-place statute obligated Donohue to turn the job site over to Gabe's in a safe condition. To succeed on this argument, Kaltenbrun must also bring Donohue within the safe-place definition of "owner." Section 101.01(2)(e), Stats., provides in relevant part:

> The term "owner" shall mean and include every . . . firm . . . who prepares plans for the construction of any place of employment or public building. Said ss. 101.01 to 101.25 shall apply, so far as consistent, to all architects and builders.

An attempt to bring a similarly situated architect within this statutory definition of "owner" was rejected by our supreme court in *Luterbach. Luterbach,* 84 Wis.

647

2d at 8–10 & n.6, 267 N.W.2d at 16–17. There, the supreme court held that an architect, who by contract is only required to make periodic visits to the site to determine whether work is proceeding in accordance with the contract, and who is not responsible for construction methods or safety precautions in connection with the work, is not an "owner" within the meaning of the safe-place statute. *Id.* at 10, 267 N.W.2d at 17. The architect's power to halt the work for failure to comply with the contract is not enough to demonstrate the requisite control for ownership status. *Id.* Such is the case here.

Kaltenbrun attempts to distinguish *Luterbach,* arguing that its application is limited to determining whether Donohue was an "owner" during the actual construction period. Prior thereto, Kaltenbrun argues that Donohue was an "owner" under the safe-place statute. As such, Kaltenbrun contends that Donohue violated the statute by relinquishing control of the site to Gabe's in an unsafe condition.

We reject Kaltenbrun's attempt to distinguish *Luterbach.* Liability under the safe-place statute hinges on ownership which is determined by factors such as possession, control, dominion and supervision. *Id.* at 9, 267 N.W.2d at 16. Donohue never acquired or possessed these indicia of "ownership." Donohue was no more an "owner" at the time control was relinquished to Gabe's than it was at the time of the accident. Therefore we conclude that the safe place statute did not apply to Donohue at the time control was relinquished to the general contractor.

## II. CROSS-APPEAL

### A. FRIVOLOUS CLAIM

Donohue cross-appeals from the denial of its motion for costs and reasonable attorney's fees pursuant to the frivolous claims statute, sec. 814.025, Stats. Donohue argues that Kaltenbrun's attorney knew, or should have known, that Kaltenbrun's action against Donohue was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law. Sec. 814.025(3)(b).

This issue presents a mixed question of fact and law. *Stoll v. Adriansen*, 122 Wis. 2d 503, 513, 362 N.W.2d 182, 187 (Ct. App. 1984). What the attorney knew regarding the facts is a factual question. *Id.* at 513, 362 N.W.2d at 187–88. The ultimate determination of frivolousness—what a reasonable attorney would or should have known—is a question of law which we review *de novo. Id.* at 513, 362 N.W.2d at 188.

Simply because Kaltenbrun did not prevail does not render his claim frivolous. *Id.* at 515, 362 N.W.2d at 188. Rather, frivolousness will be found only when *no* reasonable basis exists for a claim. *First Federated Savs. Bank v. McDonah,* 143 Wis. 2d 429, 436, 422 N.W.2d 113, 116 (Ct. App. 1988). The line between frivolousness and creative lawyering will sometimes be a fine one. This may be such a case. Even though we have rejected Kaltenbrun's attempts to distinguish and limit *Luterbach* and *A.E. Investment* and to carve out new areas of architect/designer/engineer liability both in common law negligence and safe-place negligence, we are not satisfied that

649

these attempts were without good faith arguments in support of an "extension or modification" of existing law. Sec. 814.025(3)(b), Stats.

*By the Court.*—Judgments affirmed.