KERRY INC. f/k/a Kerry Ingredients, Inc.,
Plaintiff-Co-Appellant,

v.

ANGUS-YOUNG ASSOCIATES, INC., and Design
Professionals Insurance Company,
Defendants-Respondents,†

EARTH TECH ENVIRONMENT & INFRASTRUCTURE, INC.,
James R. Lucht and William H. Moore,
Defendants-Appellants,

INDIAN HARBOR INSURANCE COMPANY and Reliance
Insurance Company of Illinois, Defendants.

Court of Appeals

*No. 03–3546. Submitted on briefs August 5, 2004.—Decided
February 24, 2005.*

2005 WI App 42

(Also reported in 694 N.W.2d 407.)

† Petition to review filed.

On behalf of the defendants-appellants, Earth Tech Environment & Infrastructure, Inc., James R. Lucht, and William H. Moore, the cause was submitted on the briefs of *Carl A. Sinderbrand* and *Hugh N. Anderson* of *Wickwire Gavin, P.C.*, Madison.

On behalf of the plaintiff-co-appellant, Kerry, Inc., f/k/a Kerry Ingredients, Inc., the cause was submitted on the briefs of *Kenneth B. Axe, Ronald J. Kotnik*, and *Frank C. Sutherland* of *Lathrop & Clark LLP*, Madison.

On behalf of the defendants-respondents, Angus-Young Associates, Inc., and Design Professionals Insurance Company, the cause was submitted on the brief of *Robert J. Kay* and *Robert A. Mich, Jr.*, of *Kay & Andersen, S.C.*, Madison.

Before Deininger, P.J., Dykman and Higginbotham, JJ.

¶ 1. DEININGER, P.J. The circuit court granted a motion for summary judgment and dismissed claims for breach of contract, professional negligence and misrepresentation brought by Kerry, Inc., against an architectural firm, Angus-Young Associates, Inc. The court also dismissed a cross-claim against the architects for contribution or indemnification filed by Earth Tech Environment & Infrastructure, Inc., and two of its employ-

ees (collectively, "Rust").[1] Kerry appeals the judgment dismissing its claims against Angus-Young, and Rust appeals the order that dismissed its cross-claim. Because we conclude that a material factual dispute exists regarding whether Angus-Young fulfilled the requisite standard of professional care in providing architectural services to Kerry, we reverse both the judgment and the order, and we remand to the circuit court for further proceedings on Kerry's and Rust's claims against Angus-Young.

## BACKGROUND

¶ 2. Kerry first retained Angus-Young in 1993 to study potential sites for a business facility. One of those sites was an existing building in Beloit that was built in part over the Rock River. With respect to that building, Angus-Young noted that the "structural stability of the 'over the river' building [was] unknown at this time," and it recommended that a structural inspection be made.

¶ 3. Kerry retained a professional engineering firm, Rust, to inspect the building and report on its structural soundness. Rust reported in August 1995 that the 1920's vintage building was "located over the Rock River and supported on concrete piers and cais-

---

[1] The parties refer to Earth Tech Environment & Infrastructure, Inc., and its employees, James Lucht and William Moore, as the "Rust defendants," apparently because, at the time that it performed the structural inspection at issue in this case, Earth Tech was known as Rust Environment & Infrastructure. We adopt the parties' reference but shorten it to simply "Rust." Three insurance companies are also named as defendants in the caption, but none make claims or arguments apart from their insureds, and we will not refer again to the insurers in this opinion.

sons." Rust found the building, based on its "visual inspection," to be "in good structural condition," with the exception of several needed minor repairs. As for the "River Level" portion of its inspection, Rust reported that the piers and caissons were "in good structural condition except for two piers and caissons," for which it recommended concrete repairs and patching. Rust concluded, however, that "[a]t this time, the piers and caissons are not considered a significant safety concern." The report was silent regarding whether any inspection had been conducted of the foundation components that were below the water line.

¶ 4. Kerry acquired the building and retained Angus-Young to perform architectural services relating to renovation of the building for Kerry's purposes. The two parties entered into a written contract on December 13, 1995, although Angus-Young performed preliminary work and made cost estimates prior to that date. Kerry provided Angus-Young a copy of Rust's report at some point before the formal contract for architectural services was executed in December, the precise date being in dispute. When work began and interior flooring on the first floor was removed, it was discovered that one corner was three and three-quarters inches lower than the rest of the floor. Angus-Young recommended to Kerry that an engineering firm be retained to investigate the cause of the floor drop. Engineers (not Rust) determined that the building rested, below the water line, not on solid concrete piers and caissons, but on timber piles, some of which had deteriorated. Costly and time-consuming repairs were then made to the building foundation before the building renovation could proceed and be completed.

¶ 5. Kerry maintains that it would not have undertaken the renovation project and incurred the addi-

423

tional foundation repair costs had the true condition of the building's foundation been known before the work started. Kerry sued Angus-Young and Rust to recover its additional, unanticipated renovation costs.[2] Kerry alleged that Angus-Young breached its contract, committed professional negligence and made negligent or strict-liability misrepresentations by, among other things, failing to properly review the Rust report and failing to properly determine the renovation project requirements and projected costs. Rust cross-claimed against Angus-Young for contribution and indemnification in the event Rust was determined liable to Kerry for damages.

¶ 6. The circuit court granted Angus-Young's motion for summary judgment against Kerry, concluding that the contract between the parties precluded Angus-Young from incurring any liability deriving from the inadequacy of the Rust report. The court determined that Angus-Young was contractually entitled to rely on the Rust report, which had been independently obtained by Kerry and furnished to Angus-Young. The court subsequently also granted Angus-Young's motion to dismiss Rust's cross-claim, thus terminating the litigation with respect to Angus-Young. Kerry and Rust appeal the dismissal of their respective claims against Angus-Young.

## ANALYSIS

¶ 7. We review the granting or denial of motions for summary judgment de novo, applying the same methodology and standards as the trial court. *Green*

---

[2] Kerry settled its claim against another defendant, the foundation contractor, who was then dismissed as a party to the litigation.

*Spring Farms v. Kersten*, 136 Wis. 2d 304, 316, 401 N.W.2d 816 (1987). Summary judgment is appropriate where the pleadings and evidentiary submissions show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Maynard v. Port Publ'ns, Inc.*, 98 Wis. 2d 555, 558, 297 N.W.2d 500 (1980). This court will reverse a decision granting summary judgment if the trial court incorrectly decided legal issues or if material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). We, like the trial court, may not decide issues of fact but must determine only whether a material factual issue exists. *Id*. Finally, if there is doubt as to whether a genuine issue of material fact exists, we will resolve those doubts against the party moving for summary judgment. *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

¶ 8. Typically, we would begin our independent summary judgment analysis with a discussion of the elements of the claims Kerry has alleged against Angus-Young. We would then review the record to determine whether these elements were established or placed in dispute by the parties' submissions. Here, however, setting aside Kerry's misrepresentation claims for the moment, our focus will be much narrower because the dispositive issue is whether the plain language of the Kerry-Angus-Young contract precludes Angus-Young's liability in either tort or contract for failing to recognize the alleged inadequacy of the Rust inspection report. That is, Angus-Young maintains that it had no contractual duty to evaluate the adequacy of the Rust inspection report, and further, even if it had a common-law duty to determine whether the report was adequate for it to proceed with renovation design work, Angus-Young

425

contends that the terms of its contract with Kerry absolved it of that duty. We disagree.

¶ 9. The supreme court explained in *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 489, 214 N.W.2d 764 (1974), that an "architect has the duty of using the standard of care ordinarily exercised by the members of that profession." Like other professionals, architects generally perform their services pursuant to contracts with their clients. This means that claims against architects for improperly performed work may often sound in either contract or tort, but their common-law duty to exercise the standard of professional care for architects exists independent of any contract, which merely " 'furnishe[s] the occasion' for fulfillment of that duty." *Milwaukee Partners v. Collins Eng'rs, Inc.*, 169 Wis. 2d 355, 362, 485 N.W.2d 274 (Ct. App. 1992). "Thus, unless public-policy considerations against liability intervene, professionals in Wisconsin are liable in tort for economic damages irrespective of whether there is a contractual relationship between the parties." *Id.* at 363 n.3.

¶ 10. Applied here, these principles mean that Angus-Young cannot claim to have been absolved by its contract from its duty to exercise "due architectural care" in performing services for Kerry—that duty pre-existed the parties' contract and attached itself to all of the activities Angus-Young performed in fulfilling its contract with Kerry relating to the renovation project. Angus-Young contends, however, that the scope of an architect's services can be limited by the parties' contract, and the parties are free to allocate particular risks and responsibilities relating to a given project between them in any fashion they may agree. Here, according to Angus-Young, evaluation of the adequacy

of the Rust report was not within the scope of Angus-Young's services as defined by the parties' contract.

¶ 11. Angus-Young points to several provisions in the contract in support of its position. The following are listed as "optional additional services" under the contract, and, hence, are *not* within the services Angus-Young was contractually obligated to perform: "[p]roviding planning surveys, site evaluations or comparative studies of prospective sites"; "[p]roviding services to investigate existing conditions or facilities"; "[p]roviding services to verify the accuracy of drawings or other information furnished by the Owner"; and "[p]roviding services in connection with the work of . . . separate consultants retained by the Owner." The contract also specifically required Kerry, not Angus-Young, to furnish "surveys describing physical characteristics," as well as "structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents." Finally, as to any "services, information, surveys and reports" furnished by Kerry under these provisions, Angus-Young was "entitled to rely upon the accuracy and completeness thereof."

¶ 12. Based on these provisions in the contract, Angus-Young maintains that it had no responsibility to assess the adequacy of the Rust structural inspection report, and instead, could accept it as furnished by Kerry and rely on its conclusion that the building's structure and foundation were in good condition. Angus-Young points to *Luterbach v. Mochon, Schutte, Hackworthy, Juerisson, Inc.*, 84 Wis. 2d 1, 267 N.W.2d 13 (1978), as establishing the principle that architects may limit the scope of their services by contract. The plaintiff in *Luterbach* was injured on a construction site

when an excavation caved in. *Id*. at 3. He sued the project architects, whom he claimed were contractually obligated to provide "general supervision and direction of the work," thus rendering them liable for breaches in worksite safety standards. *Id*. at 5–6. The supreme court rejected the plaintiff's argument and affirmed the dismissal of his claims based on a specific provision in the owner-architect contract that the architect " 'shall not be responsible for construction means, methods . . . or for safety precautions and programs in connection with the work.' " *Id*. at 6.

¶ 13. We reached a similar conclusion in *Kaltenbrun v. City of Port Washington*, 156 Wis. 2d 634, 457 N.W.2d 527 (Ct. App. 1990), where we absolved an architect of any responsibility for an unsafe access road serving a construction site. We followed the *Luterbach* rationale in concluding that the architect bore no contractual responsibility or common-law duty to ensure worksite safety. *Kaltenbrun*, 156 Wis. 2d at 644. We rejected the plaintiff's attempt to impose such a duty under the standard of care for architects recognized in *A.E. Investment*, which requires architects to undertake their duties with "an awareness and a responsibility to the public welfare." *A.E. Investment*, 62 Wis. 2d at 488. The plaintiff in *Kaltenbrun* relied on that language to assert that architects must submit designs that include safety features for adjacent areas. *Kaltenbrun*, 156 Wis. 2d at 645. We distinguished *A.E. Investment*, however, by pointing out that the defect there was "in the *structure itself*," not in an area adjacent to it. *Kaltenbrun*, 156 Wis. 2d at 645. We concluded that, "[a]bsent a greater contractual assumption of duty, the effect of *Luterbach* and *A.E. Investment* is to limit an architect's common law liability to instances of unsafe or defective design of the structure itself." *Id*.

428

¶ 14. The distinction we recognized in *Kaltenbrun* works against Angus-Young in this case. Moreover, Kerry's claim, unlike those in *Luterbach* and *Kaltenbrun*, does not involve an alleged duty to oversee construction methods or worksite safety. The defect that allegedly caused Kerry to suffer a loss involved the building under renovation itself, not an adjacent area. Kerry does not claim that Angus-Young was contractually obligated to perform its own structural inspection of the building foundation, but that, in the exercise of due architectural care, it should have recognized the inadequacy of the Rust report to serve as a basis for its preparation of plans for the renovation of the building. Because the report says nothing about the building's foundation below the water, line and is silent with respect to whether the underwater features were inspected, Kerry claims that Angus-Young should have called for a more extensive inspection before it performed its contracted service of planning the renovation work to be done on the building.

¶ 15. We agree with Kerry that the parties' contract does not preclude such a claim. The "Project" identified in the parties' contract includes the "complete interior renovation" of the building in question. The "scope of architect's basic services" set forth in the contract includes, among others, the following: "normal structural, mechanical and electrical engineering services"; reviewing Kerry's "program" in order to "ascertain the requirements of the Project"; reviewing with Kerry "alternative approaches to design and construction of the Project"; preparing "drawings and other documents to fix and describe the size and character of the Project as to architectural, structural, mechanical and electrical systems, materials and such other elements as may be appropriate"; and preparing

drawings and specifications "setting forth in detail the requirements for the construction of the Project." The contract permitted Angus-Young to retain consultants to assist it in performing its duties, and it obligated Kerry to "furnish the services of other consultants when such services are reasonably required by the scope of the Project and are requested by the Architect."

¶ 16. We are satisfied that the foregoing provisions required Angus-Young to devise and furnish Kerry with plans and specifications that would result in Kerry obtaining a safe and suitable building to house its business. Kerry's claim against Angus-Young is premised on the allegedly "unsafe or defective design of the structure itself," *see Kaltenbrun*, 156 Wis. 2d at 645, at least as originally proposed by Angus-Young in reliance on the Rust report.

¶ 17. We also conclude that Kerry submitted sufficient evidence in support of its claim to survive summary judgment. Kerry's expert, an architect, opined in an affidavit that Angus-Young "failed to comply with the applicable standard of care of a reasonably prudent architect . . . [b]y failing to reasonably determine the overall scope of work necessary for renovation of the [building]" during both Angus-Young's preliminary work and under the December 13, 1995 contract. Specifically, the Kerry expert concluded that Angus-Young failed: (1) to recognize that "significant renovations would be necessary to the foundation, at a substantial cost"; (2) to "determine whether the building would be safe for occupancy" and "meet all applicable building codes"; and (3) to "determine that the Rust report . . . was inadequate to determine long-term building safety, by failing to request more foundation information, or at [a] minimum by failing to bring such

deficiencies to the owner's attention." Finally, this architect reviewed the Kerry-Angus-Young contract, and opined that the term "normal structural, mechanical and electrical engineering services" would encompass an obligation on Angus-Young's part to not only review the Rust report and advise Kerry as to its adequacy, but further, given the report's content or lack thereof, to recommend a "further structural investigation."

¶ 18. We are thus satisfied that the record on summary judgment places in dispute whether Angus-Young failed to meet the requisite standard of professional care in discharging its responsibilities under its contract with Kerry. Nothing in the contract relieves Angus-Young of its common-law obligation to render its services to that standard, and a jury issue is presented as to whether it did or did not do so. This is not a case like *Luterbach* or *Kaltenbrun* where a plaintiff is seeking to hold an architect liable for losses wholly outside the scope of the architect's contracted services.[3] Accord-

---

[3] The parties provided us with supplemental argument on the applicability to the present facts of the supreme court's holding in *Baumeister v. Automated Products, Inc.*, 2004 WI 148, 277 Wis. 2d 21, 690 N.W.2d 1, which was decided after this appeal was briefed and submitted. We agree with Kerry that the court's conclusion in *Baumeister* that the architect in that case could not be held liable for injuries sustained by construction workers during the erection of wood trusses is of little relevance to this appeal. The court noted, as it had in *Luterbach*, that the parties' contract absolved the architect of any responsibility for " 'construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work.' " *Baumeister*, 277 Wis. 2d 21, ¶ 21. In addition, the court noted the plaintiff's failure to submit expert evidence tending to establish that the architect in *Baumeister* had

ingly, the circuit court erred in dismissing Kerry's breach of contract and professional negligence claims against Angus-Young.

¶ 19. Kerry also contends that its claims for negligent and strict-liability misrepresentation should survive summary judgment, although its argument on the point is terse, as is Angus-Young's response. Angus-Young argues only that these claims should be dismissed because they are based solely on "Angus-Young's alleged failure to advise Kerry of the deficiencies in the Rust report," which it claims to have had "no contractual duty to analyze or verify." Angus-Young does not explain why, if Kerry's breach of contract and professional negligence claims survive summary judgment, which we conclude they do, Kerry's misrepresentation claims should nonetheless be dismissed.

¶ 20. In order to prevail on a misrepresentation claim, Kerry must show that Angus-Young "made a representation of fact," that was "untrue," which Kerry believed to be true and relied on. *See* Wis JI—Civil 2402 and 2403. In addition, Kerry must establish that Angus-Young was either negligent in making the representation, or made it under circumstances in which Angus-Young knew or ought to have known the truth or untruth of the statement and stood to make a financial gain if Kerry entered into a transaction. *Id.* The Rust inspection report allegedly contained an untrue representation (i.e., that the building foundation was structurally sound), and Kerry maintains that Angus-Young's silence with respect to the adequacy of the Rust

breached any professional duties or the requisite standard of care, *id.*, ¶ 19, an infirmity that, as we have described, the present record does not share.

432

report constituted a separate misrepresentation on its part that the report was adequate for the purpose of preparing plans and specifications for the building renovation. Silence may be actionable as a negligent or strict-liability misrepresentation if Angus-Young had a "duty to speak," e.g., "where the circumstances would call for a response in order that the parties may be on equal footing; or where there is a relationship of trust or confidence between the parties." Wis JI—Civil 2402 (footnotes omitted).

¶ 21. Thus, at bottom, the key question for the fact finder with respect to the misrepresentation claims against Angus-Young appears to be whether Angus-Young had a "duty to speak" with respect to the adequacy of the Rust report. That question, in turn, seemingly involves a determination of whether Angus-Young's failure to question the adequacy of the report fell below "the standard of care ordinarily exercised by the members of [the architectural] profession." *A.E. Investment,* 62 Wis. 2d at 489. If Angus-Young's failure to question the adequacy of the Rust report before preparing plans for the renovation meets that standard, then it would seem to have had no "duty to speak," and neither could it apparently then be said that Angus-Young "ought to have known" of the report's inadequacy or that it negligently remained silent on the subject. On the other hand, if the failure to question the adequacy of the Rust report represents a failure to exercise "due architectural care" under all of the facts and circumstances present, Angus-Young's silence might well also be actionable under Kerry's alternative misrepresentation theories.

¶ 22. We question whether Kerry's misrepresentation claims add anything to its ability to recover the

damages it seeks from Angus-Young, and we have some concern that these claims serve only to divert attention from what appears to be the dispositive inquiry— whether Angus-Young breached the standard of professional care. Nonetheless, because there is a factual dispute material to the resolution of these claims, and because Angus-Young has provided no rationale for dismissing the claims as a matter of law, we conclude that Kerry's misrepresentation claims should also survive summary judgment and be subject to further proceedings in the circuit court.

¶ 23. Finally, we address the dismissal of Rust's cross-claim. Although the circuit court did not articulate its rationale for dismissing Rust's cross-claim against Angus-Young for contribution or indemnification, it appears that the court did so because it had previously concluded that Angus-Young could not be found liable to Kerry, and thus, Angus-Young also could not be required to contribute to or indemnify Rust for any damages that Rust might be ordered to pay to Kerry. Angus-Young's primary argument on appeal is precisely that: "The fact that Angus-Young is not liable to Kerry negates any possibility of apportioning fault between Angus-Young and . . . Rust . . . for Kerry's damages." Because we have reversed the summary judgment in Angus-Young's favor against Kerry, the primary rationale Angus-Young advances for dismissing Rust's cross-claim also fails.

¶ 24. Angus-Young also asserts that Rust failed to allege "an independent viable claim of negligence against Angus-Young." We note that Rust's cross-claim was dismissed, not on summary judgment, but on Angus-Young's motion for "judgment on the pleadings." We thus examine the allegations of Rust's cross-claim.

Rust alleges that Angus-Young "improperly relied upon the Rust letter report, used the Rust letter report for a purpose for which it was not intended, and was otherwise negligent in the performance of its services." Rust then asserts that if Rust is "adjudged liable to Kerry, then [Angus-Young is] or may be liable to Kerry for all or part of the claim asserted against . . . Rust . . . in the action." We are satisfied that Rust has properly pled a claim for contribution or indemnification against Angus-Young, and the circuit court erred in dismissing it.

## CONCLUSION

¶ 25. For the reasons discussed above, we reverse the appealed judgment and order and remand to the circuit court for further proceedings on Kerry's and Rust's claims against Angus-Young.

*By the Court.*—Judgment and order reversed and cause remanded with directions.