COURT OF APPEALS
DECISION
DATED AND FILED

April 25, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1183**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV165

IN COURT OF APPEALS
DISTRICT III

---

BRANDON HARRIS,

   PLAINTIFF-APPELLANT,

BLUE CROSS BLUE SHIELD OF TEXAS,

   INVOLUNTARY-PLAINTIFF,

 V.

VILLAGE OF RIDGELAND, WISCONSIN TRACTOR PULLERS
ASSOCIATION, INC., WORLD PULLING INTERNATIONAL, INC.,
LEAGUE OF WISCONSIN MUNICIPALITIES MUTUAL INSURANCE
AND NATIONAL CASUALTY COMPANY,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from judgments of the circuit court for Dunn County: JAMES M. PETERSON, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Brandon Harris appeals summary judgments dismissing his personal injury claims against the Village of Ridgeland; League of Wisconsin Municipalities Mutual Insurance; World Pulling International, Inc.; Wisconsin Tractor Pullers Association, Inc.; and National Casualty Company. With respect to the Village of Ridgeland and its insurer, League of Wisconsin Municipalities Mutual Insurance (collectively "the Village"), Harris argues that the circuit court erred by concluding that the known and compelling danger exception to governmental immunity did not apply in this case. Turning to the remaining defendants, Harris contends that the court erred by concluding World Pulling International, Inc., Wisconsin Tractor Pullers Association, Inc., and its insurer, National Casualty Company (collectively "the Tractor Pullers"), were not liable for Harris's injuries, either as a matter of common law negligence or under the safe place statute, WIS. STAT. § 101.11 (2021-22).[1] We reject Harris's arguments and affirm the judgments.

## BACKGROUND

¶2 On September 2, 2018, Harris attended an annual tractor-pull event at Eldon Luer Field in the Village of Ridgeland, arriving just after 6:00 p.m. Spectator seating on the south side of the field consisted of wooden benches built into a hill, with access to the seating via grass aisles between the columns of benches. There were no stairs or hand rails. With approximately 5,000 spectators

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

in attendance, the benches were full. Because it had rained on the morning of the event, the aisles turned to mud over the course of the evening. At approximately 10:00 p.m., Harris sustained personal injuries when he slipped and fell while attempting to descend the hill from his approximately sixth-row seat.

¶3 The Village owned the property on which the event occurred, and the Village's Fair Association contracted with the Tractor Pullers to plan, organize, and execute the event. Under the contract, the Tractor Pullers agreed to provide a "presiding event manager" who was tasked with supervising "the conduct of the event and other officials necessary to conduct the event." Specifically, the event manager was responsible for ensuring that the track was properly prepared and that all safety measures of the competition were observed, which included confirming that guardrails were in place, that the crowd was far enough back from the track, that the "run-out" was correct, and that the length of the shutdown area was sufficient to avoid collisions with obstacles or the crowd. The event manager was also responsible for making sure that tech officials were present, that the vehicles were "teched properly" and registered properly with the Tractor Pullers, and, at the end of the night, for billing the event out and collecting money from the promoter. The contract made no provision for the Tractor Pullers to assume any responsibility with respect to the spectator benches, aisles, or lighting of the same.

¶4 Although the Village's Fair Association was responsible for maintaining the grounds at Eldon Luer Field, there were no written policies describing what was done. According to Kristin Huset, who was the secretary and treasurer of the Fair Association Board, the board, along with the football club and coaches, mowed the lawn and cut down weeds on the hillside "generally three times a year." During the tractor-pull event, board members walked the grounds

to assist in whatever needed their attention, and the board hired Dunn County Sheriff deputies and reserve officers to provide security.

¶5      Harris filed the underlying suit, alleging that the Village and the Tractor Pullers were negligent in failing to properly inspect, repair, maintain, and light the aisles. Harris also alleged that the Village and the Tractor Pullers failed to keep the premises safe and free of danger, thereby violating the safe place statute. Both the Village and the Tractor Pullers filed motions for summary judgment. The circuit court granted summary judgment in favor of the Village, concluding that it was entitled to governmental immunity under WIS. STAT. § 893.80(4). The court also granted summary judgment in favor of the Tractor Pullers, concluding that they had no duty to the spectators with respect to the seating facility or its aisles. This appeal follows.

## DISCUSSION

¶6      This court reviews summary judgment decisions independently, applying the same standards as the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). Summary judgment is granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

### A.  *The Village*

¶7      Whether the Village is immune from suit under WIS. STAT. § 893.80(4) is a question of law we review independently. *See Kimps v. Hill*, 200 Wis. 2d 1, 8, 546 N.W.2d 151 (1996). The statute immunizes units of local government and their officers and employees from liability for acts that involve

the exercise of discretion or judgment. *See **Noffke ex rel. Swenson v. Bakke***, 2009 WI 10, ¶41, 315 Wis. 2d 350, 760 N.W.2d 156. The governmental immunity doctrine is qualified by several exceptions. Relevant to this appeal, there is no immunity from liability for acts associated with "known and compelling dangers that give rise to ministerial duties on the part of public officers or employees." ***Id.***, ¶¶42, 53.

¶8    A duty is ministerial, as opposed to discretionary, if it is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." ***Lister v. Board of Regents of Univ. of Wis. Sys.***, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976). This narrow definition acknowledges that many governmental actions—even those done under a legal obligation—require the exercise of judgment and therefore qualify as discretionary. ***Scott v. Savers Prop. & Cas. Ins. Co.***, 2003 WI 60, ¶28, 262 Wis. 2d 127, 663 N.W.2d 715.

¶9    The known and compelling danger exception to governmental immunity applies in circumstances that are "accidents waiting to happen," where injury is almost certain to occur if no government action is taken. ***Voss v. Elkhorn Area Sch. Dist.***, 2006 WI App 234, ¶19, 297 Wis. 2d 389, 724 N.W.2d 420. The theory of this exception is that when a danger known to a public officer or employee is of such a compelling force, it strips that person of discretion or judgment and creates an absolute, certain, and imperative duty to act. ***Noffke***, 315 Wis. 2d 350, ¶43.

¶10    Wisconsin courts have developed a three-step test to determine whether the known and compelling danger exception applies in a given case. *See*

*Heuser v. Community Ins. Corp.*, 2009 WI App 151, ¶¶27-28, 321 Wis. 2d 729, 774 N.W.2d 653. First, we ask whether something happened to create a compelling danger. *Id.*, ¶28. Second, we consider whether a government actor "[found] out about the danger, making it a known and compelling danger." *Id.* Third, we ask whether the government actor addressed the danger by taking one or more precautionary measures or instead "[did] nothing and let[] the danger continue." *Id.*

¶11 In *Heuser*, an eighth-grade student in a laboratory class was injured while using a scalpel after two students in an earlier class suffered scalpel-related injuries. This court applied the known and compelling danger exception, faulting the teacher for "doing nothing in the face of personal knowledge that using the scalpels raised a safety issue." *Id.*, ¶17. Citing *Heuser*, Harris argues that just as the teacher should have realized the danger associated with allowing students to continue using scalpels when others had already been injured, the Village should have realized the obvious slip-and-fall danger of allowing thousands of people to walk up and down a steep, wet, muddy hill. We are not persuaded.

¶12 Unlike in *Heuser*, there were no other reports of falls or injuries before Harris's fall. Huset acknowledged during her deposition that the aisles could turn to mud in wet conditions and that there were a couple of years when excessive rain caused the Fair Association to cancel the event. Huset averred, however, that in the twenty years she had attended the event as a board member, she was never informed of anyone slipping and falling in the aisles, nor had she heard of any complaints about unsafe conditions in the aisles. To the extent Harris emphasizes that the Fair Association placed wood chips on the aisles once a year—thus establishing the Village's knowledge of the unsafe condition of the hill—Huset testified that the wood chips were placed to combat erosion.

¶13    Even assuming the Village knew there was a danger, there is no clear and ministerial response that could have been taken here.  In fact, Harris himself offers multiple responses that might have mitigated the alleged danger.  Thus, the time, mode, and occasion for the Village to act were not evident with such certainty that nothing remains for the exercise of discretion.  *See Lister*, 72 Wis. 2d at 301.  Ultimately, we do not agree that the alleged hazard in this case was so clear and absolute, and so certain to cause injury, as to constitute a known and compelling danger.  The circuit court, therefore, properly granted summary judgment in favor of the Village.

### B.   The Tractor Pullers

¶14    With a common law negligence claim, a defendant is liable when the defendant breaches his or her duty of ordinary care and the breach is a cause of damage to the plaintiff.  *Kochanski v. Speedway SuperAmerica, LLC*, 2014 WI 72, ¶31, 356 Wis. 2d 1, 850 N.W.2d 160.  However, with a safe place claim, an employer or owner of a place of employment or public building has a duty to maintain the place or building as safely as its nature will reasonably permit.  Thus, the common law addresses negligent acts while the safe place statute addresses unsafe conditions.  *Gennrich v. Zurich Am. Ins. Co.*, 2010 WI App 117, ¶23, 329 Wis. 2d 91, 789 N.W.2d 106.  "The standard of care that the safe place statute establishes is a higher standard of care than that which the law imposes through common-law negligence."  *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶22, 274 Wis. 2d 162, 682 N.W.2d 857.

¶15    Harris argues that the Tractor Pullers are "owners" under the safe place statute.  The statute's definition of an owner includes "any person, firm, corporation … as well as any manager, representative, officer, or other person

7

having ownership, control or custody of any place of employment or public building, or of the construction, repair or maintenance of any place of employment or public building." WIS. STAT. § 101.01(10). Harris contends that the event contract and the Tractor Pullers' actions established their ownership of the site under the statute, thus giving rise to their safe place liability. We disagree.

¶16 First, Harris emphasizes and argues that that actual ownership is not necessary. Rather, "ownership hinges on such factors as possession, control, dominion, or supervision." *Luterbach v. Mochon, Schutte, Hackworthy, Juerisson, Inc.*, 84 Wis. 2d 1, 9, 267 N.W.2d 13 (1978). The Tractor Pullers, Harris argues, are owners under the safe place statute because they contractually committed to "supervise the conduct of the event," thereby making them liable for all injuries occurring at the event. The problem, however, is in determining "how much control or supervision constitutes de facto ownership." *Id.* As the Tractor Pullers correctly note, the court must interpret the contract in a way that reflects and promotes the intention of the parties at the time they entered into the contract.[2] *See Johnson Controls, Inc. v. Employers Ins. of Wausau*, 2003 WI 108, ¶30, 264 Wis. 2d 60, 665 N.W.2d 257.

¶17 Here, the "event" was defined by the contract as "The Ridgeland Nationals," and nothing therein specified that the Tractor Pullers would be responsible for anything other than the tractor pull itself. Further, there is no dispute between the Village and the Tractor Pullers that the Village was

---

[2] In his reply brief, Harris contends that because this argument is raised for the first time on appeal, it should be deemed waived. We disagree. A respondent may advance for the first time on appeal any argument that will sustain the circuit court's ruling. *See State v. Holt*, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds by* WIS. STAT. § 940.225(7).

responsible for the condition of the spectator area, and the Tractor Pullers were responsible for the condition of the track and the competition. As the circuit court noted, there was "no indication that Tractor[] Pullers took on any responsibility for the facility other than the area where the tractor pull actually took place" and the Tractor Pullers' "concern for safety was that there was sufficient area between … where tractor pulling was going on and fans because … it's fairly well known [that] sometimes you can have engines or other parts … flying into a crowd." Concern for the general safety of spectators and participants does not create liability under the safe place statute or establish common law negligence with regard to the condition of the spectator seating area.

¶18 Harris nevertheless argues that the Tractor Pullers' authority to unilaterally suspend or terminate the event made them de facto owners, and that this same authority created a duty of care to the spectators. Harris emphasizes that the presiding event manager could suspend or terminate the event if he or she was concerned for the safety of spectators based on extreme weather, if there was no ambulance present, or if he or she deemed the competition to be "unsafe." In the context of a construction project, our supreme court has recognized that a general contractor's "retained right to check as to [a subcontractor's] compliance with specifications, and to stop construction progress for lack of compliance with specifications … is not an exercise of control" sufficient to show de facto ownership by the general contractor. *Luterbach*, 84 Wis. 2d at 9. As in *Luterbach*, we conclude that the event manager's authority to terminate or suspend the competition under certain circumstances is not an exercise of control sufficient to show de facto ownership of the spectator section under the safe place statute, nor does it establish that the Tractor Pullers had a duty of care related to the condition of the spectator section.

¶19 Harris also claims that the Tractor Pullers took "practical responsibility for injuries to spectators" by bringing accident and incident report forms in anticipation of possible spectator injuries. Harris cites nothing in the record to support a claim that the Tractor Pullers' staff were trained to directly respond to any injuries, beyond filling out a form. Ultimately, we are not persuaded that the ability to fill out an accident or incident report form during a tractor pull event demonstrates control or custody of a place of employment under the safe place statute, nor does it create a duty of care to the spectators for the condition of the spectator benches and aisles. The circuit court, therefore, properly granted summary judgment in favor of the Tractor Pullers.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.